189 P.3d 432

E & J LOUNGE OPERATING COMPA-
NY, INC., a Hawai'i corporation, Peti-
tioner/Appellant–Appellee/Cross–Appel-
lee,

v.

LIQUOR COMMISSION OF the CITY
AND COUNTY OF HONOLULU, Re-
spondent/Appellee–Appellant/Cross–Ap-
pellee.

and

H. James Stahl; Tyson J. Thomas; Randi
Thomas; Emily Reed; and Bill Max-
well, Respondents/Intervenors Appel-
lees/Intervenors–Cross–Appellants.

No. 27940.

Supreme Court of Hawai'i.

July 29, 2008.

Duane W.H. Pang, Deputy Corporation Counsel, City and County of Honolulu, for Respondent/Appellee–Appellant/Cross–Appellee Liquor Commission of the City and County of Honolulu.

David W.H. Chee, Wahiawa (Brooks Tom Porter & Quitiquit), for Petitioner/Appellant–Appellee/Cross–Appellee E & J Operating Company, Inc.

Randi Thomas, pro se (H. James Stahl, Tyson J. Thomas, Bill Maxwell, and Emily Reed, pro se, with her on the briefs), Respondents/Intervenors–Appellees/Intervenors–Cross–Appellants.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

Petitioner/Appellant–Appellee/Cross–Appellee E & J Lounge Operating Company, Inc., a Hawai'i corporation (Petitioner), seeks review of the judgment of the Intermediate Court of Appeals (the ICA)[1] filed on January 8, 2008, pursuant to its December 24, 2007 published opinion vacating the April 20, 2006(1) Findings of Fact (FOF), Conclusions of Law (COL) and Decision and Order and (2) Judgment of the Circuit Court of the First Circuit[2] (the court), and remanding the case to the court to determine Petitioner's appeal on the merits. *See E & J Lounge Operating Co. v. Liquor Comm'n, City & County of Honolulu,* 116 Hawai'i 528, 556, 174 P.3d 367, 395 (App.2007).

We hold that (1) public hearings on liquor license applications held by the liquor commission are contested case hearings such that Hawai'i Revised Statutes (HRS) § 91–11 (1993)[3] requires any commissioner who is not present at any stage of the public hearing to become familiar with the record before voting on a liquor license application, unless the application is automatically rejected pursuant to HRS § 281–59(a) (2007),[4] (2) Re-

1. The published opinion was authored by Associate Judge Corinne K.A. Watanabe and joined by Chief Judge Mark E. Recktenwald. Associate Judge Craig H. Nakamura filed a separate dissenting opinion. ICA, as used in connection with this appeal, refers to the majority opinion.

2. The Honorable Eden Elizabeth Hifo presided.

3. HRS § 91–11 is quoted in its entirety *infra* at note 10.

4. HRS § 281–59(a) provides, in pertinent part, that if a majority of the:

(1) Registered voters for the area within five hundred feet of the nearest point of the premises for which the license is asked; or (2) Owners and lessees of record of real estate and owners of record of shares in a cooperative apartment within five hundred feet of the nearest point of the premises for which the license is asked;

have duly filed or caused to be filed their protests against the granting of the license, or if there appears any other disqualification under this chapter, the application shall be refused.

spondent/Appellee–Appellant/Cross–Appellee Liquor Commission of the City & County of Honolulu (the Commission) did not comply with HRS § 91–11 in this case, (3) HRS § 91–13.5 (Supp.2004) [5] does not require automatic approval of Petitioner's liquor license application, and (4) the court's finding, that it is unclear from the present state of the record whether the Commission complied with the notice requirements of HRS § 281–57 (Supp.2006),[6] because it was not challenged on secondary appeal to the ICA or this court, is affirmed. Thus, we vacate the ICA's judgment, affirm the court's decision and order as clarified below, and remand the case to the court with instructions to (1) vacate the Commission's decision and order and (2) remand the application to the Commission for decision-making in compliance with the court's order and this opinion, specifically, (a) to determine whether the notices sent by Petitioner complied with HRS § 281–57 and, if so, (b) to rule on the application after all voting commissioners have reviewed the entire agency record in accordance with HRS § 91–11.

## I.

Petitioner submitted an Application for Liquor License to the Commission for a General Dispenser License for the Island Colony condominium located at 445 Seaside Avenue in Waikiki. On February 24, 2005, pursuant to HRS § 281–57(a),[7] the Commission held a preliminary hearing to determine whether Petitioner's application should be scheduled for a public hearing or denied. The Commission voted three-to-one in favor of scheduling a public hearing for Petitioner's application.

On April 21, 2005, the first of what would be three public hearing-dates pursuant to HRS § 281–57(b),[8] the public hearing on Petitioner's application commenced and the Commission received substantial testimony and evidence. At that hearing, only three of the five Commissioners were present: Dennis Enomoto (Enomoto), Danny Kim (Kim), and Chu Lan Shubert Kwock (Kwock). *E & J Lounge*, 116 Hawai'i at 541, 174 P.3d at 380.

The hearing was continued to April 28, 2005, at which time the Commission received additional testimony and evidence. Four out of five Commissioners were in attendance at that hearing: Enomoto, Kim, Kwock, and Danny Auyoung (Auyoung). *Id.*

The hearing was again continued to May 12, 2005. Three out of the five Commissioners were in attendance at the meeting: Auyoung, Enomoto, and Kwock. *Id.* at 542, 174 P.3d at 381. On that date, the Commission voted to deny Petitioner's license application.

(Emphases added.)

---

**5.** In pertinent part, § 91–13.5, entitled "Maximum time period for business or development-related permits, licenses, or approvals; automatic approval; extensions[,]" provides:

(c) All such *issuing agencies shall take action to grant or deny any application for a business or development-related* permit, *license,* or approval *within the established maximum period of time, or the application shall be deemed approved.*

. . . .

(e) For purposes of this section, "application for a business or development-related permit, license, or approval" means any state or county application, petition, permit, license, certificate, or any other form of a request for approval required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise, or for any permit, license, certificate, or any form of approval required under sections 46–4, 46–4.2, 46–4.5, 46–5, and chapters 183C, 205, 205A, 34–A, 340B, 340E, 340F, 342B, 342C, 342D, 342E, 342F, 342G, 342H, 342I, 342J, 342L, and 342P.

**6.** The relevant provisions of HRS § 281–57 are set forth *infra* at notes 7, 8 and 30.

**7.** HRS § 281–57(a) states in relevant part that "[u]pon the filing of the investigator's report upon any application the [Commission] may hold a preliminary hearing and upon such preliminary hearing it may deny the application."

**8.** HRS § 281–57(b) provides, in pertinent part:

If no preliminary hearing is had or if the application is not denied upon a preliminary hearing, *the [C]ommission shall fix a day for the public hearing of the application . . . and shall give the public notice of the hearing . . . .* The notice shall require that all protests or objections against the issuance of the license applied for shall be filed with the administrator of the [C]ommission at or before the time of hearing. . . .

(Emphases added.) HRS § 281–57(b) is quoted in its entirety *infra* at note 30.

On July 14, 2005, the Commission served Petitioner's attorney a certified copy of its June 16, 2005 written FOF, COL, and Decision and Order. *Id.*

On August 11, 2005, Petitioner filed a notice of appeal to the court pursuant to HRS § 91–14 (1993 & Supp.2004), alleging that the Commission violated HRS chapter 91.[9] Petitioner argued, among other things, that because Auyoung was to render a decision on May 12, 2005 but did not hear all the evidence because he was absent from the first hearing on April 21, 2005, the Commission was required under HRS § 91–11 [10] to issue a proposed decision and provide an opportunity for Petitioner to file exceptions and present arguments on the proposed decision prior to issuance of a final decision. Petitioner therefore contended that the Commission violated HRS § 91–11 in failing to follow this procedure prior to issuing its final decision.[11]

9. On appeal to the court from the Commission's June 16, 2005 FOF, COL, and Decision and Order, Petitioner raised the following issues in its opening brief before the court: (1) "*[t]he [Commission's] Order denying the liquor license must be vacated for failure to comply with HRS § 91–11[]*"; (2) "*HRS § 91–13.5(c) requires issuance of the liquor license[ ]*"; (3) "*[t]he court should not remand this matter to the Commission for further hearings or decision making\* given that the time allowed by statute for the [Commission] to rule on [Petitioner's] application has expired.*" (Emphases added.)

In its answering brief before the court, the Commission stated the following: (1) "[p]ublic hearings and contested case hearings have different statutory procedure requirements and are governed by different liquor statutes and rules%[ ]"; (2) "[c]ontrary to [Petitioner's] argument, HRS § 91–11 was not applicable during public hearings concerning [Petitioner's] liquor license application[ ]"; and (3) "[t]he Commission's decision was made promptly and within the time period specified under HRS § 91–13.5."

In its answer to Petitioner's Statement of the Case, Respondents/Intervenors–Appellees/Intervenors–Cross–Appellants H. James Stahl, Tyson J. Thomas, Randi Thomas, Emily Reed, and Bill Maxwell [collectively, Intervenors] stated the following: (1) "[c]ommissioners are absent from hearings constantly and if every action of the Committee [sic] which occurred when one of them was absent could be challenged, the Committee [sic] would be useless[ ]"; (2) "[t]here was sufficient written testimony on file from the April 21, 2005 hearing for Mr. Auyoung to make an informed decision and to vote accordingly[ ]"; (3) " 'although the location of the proposed licensed premises is in Waikiki, the specific area and more particularly the specific building is a residential area[and, a]s a result[,] it would be incompatible to permit this type of license to be situated at this location[ ]' " (quoting Commission's Findings of Fact at 5, Paragraph 15); (4) considering the location of Petitioner's establishment and the surrounding residential units, " '[i]t would not be in the public interest to grant a Dispenser General License to [Petitioner]' " (quoting Commission's Findings of Fact at 5, Paragraph 2); (5) "[f]or the court to order [the Commission] to issue the Dispenser General License to [Petitioner] using as its sole reason that the alleged oversight of a procedural technicality occurred[,] would be tantamount to the court ruling that the needs of one outweigh the needs of the many."

Additionally, in their Opposing Brief to the court, Intervenors argued that *in mailing the notices, Petitioner did not satisfy the requirements of HRS § 281–57 that notices be mailed to a requisite number of owners and lessees and registered voters in the neighboring area, such that the Commission was not authorized to consider Petitioner's application.*

10. HRS § 91–11 requires that

*[w]henever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision,* if adverse to a party to the proceeding other than the agency itself, *shall not be made until a proposal for decision* containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, *and an opportunity has been afforded to each party adversely affected to file exceptions and present argument* to the officials who are to render the decision, who shall personally *consider the whole record or such portions thereof as my be cited by the parties.*

(Emphases added.)

11. At oral argument, the court questioned Petitioner about the effect of HRS § 281–59(b) related to "proposed corrections, additions, and subtractions ... regarding the master list" of neighboring tenants and registered voters required to be noticed. Petitioner responded that HRS § 281–59(b) provided for such a procedure, but that it had not been invoked before the Commission inasmuch as Intervenors had not proposed any specific changes to the mailing list. Petitioner argued that, under the statute,

there's a requirement that whoever wants to make corrections to the list offer those corrections ... and, Your Honor, as far as I'm aware, that was not done in this particular case. If no offer of corrections is made, I do not believe the [Commission] is obliged to make any findings or conclusions or give any reasons for any changes because no changes are going to be made.... I do not believe ...

The court ruled that the public hearing required pursuant to HRS § 281–52 (1993) was a contested case hearing and that "the Commission was required to comply with the contested case procedures" in HRS chapter 91, but that the Commission "did not comply with HRS § 91–11." On April 20, 2006, the court entered its FOF, COL, and Decision and Order. The court found as follows:

1. [Petitioner] filed a Liquor License application for a Dispenser General License (Category 3–Live Entertainment, Recorded Music, and Dancing) with the Commission on January 10, 2005 (herein "Application").

2. On February 24, 2005, the Commission held a preliminary hearing to review the Application. Commissioners were provided with the investigation report and [Petitioner] did not object to the contents of the investigation report, the Commission approved the setting of a Public Hearing for the Application.

3. The Commission is composed of five members, who are appointed for terms of five years. HRS § 281–11. At the February 24, 2005 preliminary hearing, four Commissioners attended the hearing; Chair [Enomoto], Co–Vice Chairs Clyde J. Eugenio [ (Eugenio) ] and [Kwock] and Commissioner [Kim]. At that time, the fifth commissioner's seat was vacant.

4. On February 25, 2005, [Petitioner] was informed that the public hearing would be scheduled for April 21, 2005.

5. As required under HRS § 281–57(b), notice of the public hearing for [Petitioner's] application was published in the Mid-week and Honolulu Star–Bulletin on March 3rd and 10th, 2005. In addition to the publication of the public notice, [Peti-

tioner] submitted an affidavit that the mailing of notices of the hearing to those who reside within the five hundred feet of the premises was completed as required by HRS § 281–57.

6. *On April 21.2005, the public hearing for [Petitioner's] liquor license application began. The Commissioners that were present were Chair Enomoto, Co–Vice Chair Kwock and Member Kim. Two Commissioners were absent, Co–Vice Chair Eugenio and Member Au Young. [Peti-tioner] was represented by its President William Comerford and Counsel Wayne Luke.*

7. *Testimony from the members of the public Questioned the Commission as to whether the proper notices were sent out as required under HRS § 281–57. The* Commissioners commented that this matter should be looked into.

8. The Commission was again provided with the investigation report and received both written comments and oral testimony regarding [Petitioner's] liquor license application. The Commissioners then decided to continue the public hearing to April 28, 2005.

9. *At the April 28, 2005 continuation of the public meeting, present were Chair Enomoto, Co–Vice Chair Kwock, Member Kim and Member Au Young.* [Petitioner] was represented by its President William Comerford and Counsel Wayne Luke. Again, the Commissioners were provided with the investigation report. In addition, the Commissioners were provided with a supplemental investigation report. The Commission continued to accept oral testimony and written comments. Prior to ending or closing the public hearing, [Petitioner] through its President Mr. Comer-

---

that that particular section is going to be relevant.
Petitioner further argued that any such error was immaterial on the ground that the Commission had not complied with HRS § 91–11 and because the time limit for the Commission's decision had lapsed, triggering the automatic approval provision of HRS § 91–13.5. Upon review of the briefs and the oral argument transcripts, the court ruled orally, in pertinent part, that "the law is such that the [C]ommission has to at least make a ruling pursuant to [HRS § ]281–59(b) as to whether the master list was accurate...."

*However, these issues were not challenged by the Commission or the Intervenors on appeal to the ICA. See infra at 48.* In fact, on appeal to the ICA, the Commission noted that at the first public hearing, questions arose whether proper notice was supplied to the community in accordance with HRS § 281–57, and the Commission stated that the matter would be investigated. However, the Commission did not indicate if the issue was resolved before its decision-making meeting and did not dispute the court's finding that the Commission failed to verify that Petitioner complied with HRS § 281–57.

ford was permitted to respond on questions and comments raised during the two days of public hearings.

10. Testimony from the members of the public again questioned whether the number of notices as required under HRS § 281–57 was sent out.

11. At the end of the April 28 2005 meeting, the Administrator of the [Commission] requested two weeks to verify the total number of written protest. The Commission ended or closed the public hearing and continued its decision making to May 12, 2005. In addition, the Commission permitted additional written comments to be accepted up until April 29, 2005.

12. *At the continued hearing of May 12, 2005, Chair Enomoto, Co–Vice Chair Kwock and Member Au Young were present.* [Petitioner] was again represented by its President William Comerford and Counsel Wayne Luke.

13. *At the May 12, 2005 public hearing, the investigator for the Liquor Administrator informed the Commission that he was not able to verify the total number of owners and lessees who opposed the liquor license.* The investigator further informed the Commission that thirty-two percent of the registered voters within five hundred feet of the proposed liquor license premises opposed the liquor license.

14. *Counsel for [Petitioner] then objected to Commissioner Au Young participating in the decision since he was not present at the April 21st meeting. The issue was also referred to counsel for the Commission, who advised that since this was a public hearing and not a contested case or adjudicatory hearing, Commissioner Au Young could participate. The Chair also verified that all of the Commissioners were provided with all of the investigative reports and supplemental reports.*

15. *The Commission then decided to deny [Petitioner's] liquor license. Chair Enomoto, Co–Vice Chair Kwock and member Au Young vot[ed] to deny the license.*

16. [Petitioner] filed a timely appeal under HRS § 91–14 to the Circuit Court on August 11, 2005.

17. On September 6, 2005, Intervenors[ ] filed a Motion to Intervene, and said Motion was granted on October 26, 2005.

18. On or about December 14, 2005, Intervenors filed a Motion to Present Additional Evidence to the Commission, *alleging that the number of notices of public hearing as required under HRS § 281–57 was not proper.*

(Emphases added.) Based on the foregoing, the court concluded:

1. *The Commission is required to hold a public hearing prior to issuance of a liquor license under HRS § 281–52.*

2. *Hawai'i [c]ourts have determined that public hearings held before administrative agencies are contested cases. Simpson v. [Dep't] of Land [ & ] Natural Res[.],* 8 Haw.App. 16, 23, 791 P.2d 1267, 1272 (1990)[ (]citing *In re Application of Hawaiian Elec. Co.,* 56 Haw. 260, 264, 535 P.2d 1102, 1105 (1975) (citing [*E.] Diamond Head Ass'n v. Zoning Bd. of Appeals,* 52 Haw. 572, 479 P.2d 796 (1971))[;] *Mahuiki v. Planning [Comm'n],* 65 Haw. 506, 654 P.2d 874 (1982)).

3. [Petitioner] seeks relief before this [c]ourt pursuant to HRS § 91–14 which permits judicial relief for any person aggrieved by an agency's final decision and order in a contested case.

4. *The public hearings held before the Commission prior to issuance of a Liquor License are adjudicatory in nature and are therefore contested cases.*

5. This [c]ourt therefore has jurisdiction over [Petitioner's] appeal from the Commission's denial of its Liquor License Application.

6. Intervenors' Application to Present Additional Evidence, pursuant to HRS § 91–14(e) was timely filed.

7. *Because the public hearing before the Commission is a contested case hearing, the Commission was required to comply with the contested case procedures in HRS Section 91 et sea. [sic] including*

*HRS § 91–11. The Commission did not comply with HRS § 91–11.*

8. Under HRS § 281–59(a) the Commission is required to approve or deny the license application within 15 days of closing of the public hearing unless [it] extend[s] the time to thirty days.

9. *HRS § 91–13.5(c) requires the Commission to take action on the application within the time prescribed by HRS § 281–59(a) or the license is deemed granted.*

10. *At this time the [c]ourt does not rule on whether the Commission's denial of the Application in light of its failure to comply with HRS § 91–11, would be deemed a failure to act under HRS § 19–13.5[91–13.5](c).*

11. Under HRS § 281–59(b)[,] the Commission was required to make a ruling on corrections, additions or subtraction of the persons required to be notified of the public hearing, as required under HRS § 281–59(a). The [c]ourt finds that the Commission did not make such rulings.

12. *Under HRS § 281–57[,] if the proper notices have not been sent out, the Commission shall cancel the public hearing.*

13. *The Commission did not make a determination as required under HRS § 281–57 that the proper number of notices had been sent out.*

14. The Court grants the Intervenors' Application to. Present Additional Evidence.

(Emphases added.)

Pursuant to its findings and conclusions, the court entered the following decision and order:

IT IS HEREBY ORDERED, AD-JUDGED AND DECREED that the de-cision of the Commission to Deny [Petitioner's] Application is REVERSED and REMANDED; and that [the] Application to Present Additional Evidence is hereby GRANTED with the following instructions:

1. *The Commission shall determine whether the proper notice as required under HRS § 281–57 was made by [Petitioner].* In doing so the Commission may accept additional evidence and argument, and may hold additional hearings regarding the proper number or persons required to be served under HRS § 281–57.

2. *Upon determining the proper number of persons required to be served under HRS § 291–57[sic], the Commission may grant or deny the Application based on its ruling, may require [Petitioner] to serve all persons required to be served under HRS § 281–59, and or hold additional public hearings.*

(Emphases added.) On its face, the court's first instruction appears to be somewhat unclear. However, reading the decision and order in context with the parties' arguments, it can be discerned that the first instruction is addressed to the Intervenors' argument that Petitioner did not serve notice on (1) at least two-thirds of the owners and lessees of record within five hundred feet of Petitioner's premises including at least three-quarters of those within one hundred feet and (2) at least two-thirds of the registered voters and small businesses within five hundred feet of Petitioner's premises including at least three-fourths of those within one hundred feet of the premises, as required by HRS § 281–57(c). *See infra* note 30.

The Commission filed a notice of appeal to the ICA on May 18, 2006.[12] Intervenors[13] filed a notice of cross-appeal[14] on May 22,

---

12. On appeal to the ICA the Commission argued (1) the hearing in question was a public hearing governed by the State's Sunshine Laws in HRS § 92–1 through § 92–16 and, thus, not subject to the contested case hearing requirements in HRS §§ 91–1 to 91–13, and (2) "[t]he procedures for a liquor license application is more indicative of a public hearing rather than a contested case."

Petitioner answered that "proceedings held to determine whether a liquor license should be issued are contested cases[,]" (formatting altered), arguing that "the procedures of [HRS § ]281–59 are consistent with [c]ontested [c]ase [h]earings[,]" (formatting altered).

13. The Intervenors are Owners and Resident–Owners of the Island Colony and Seaside Suites, part of the "[c]ommunity" that opposed having a bar operating in its apartment building.

14. The Commission filed its notice of appeal first. Under Hawai'i Rules of Appellate Procedure (HRAP) Rule 4.1, after one party in a multiparty litigation files an appeal, every other par-

2006.[15] None of the parties raised a challenge to any specific FOFs or COLs of the court in the briefs to the ICA, in the application for certiorari, or in the objection to the application filed by the Commission. However, it may be inferred that before the ICA, the Commission and the Intervenors challenged COL 4 ("The public hearings held before the Commission prior to issuance of a Liquor License are adjudicatory in nature and are therefore contested cases.") and COL 7 ("Because the public hearing before the Commission is a contested case hearing, the Commission was required to comply with the contested case procedures in HRS Section 91 et seq. [sic] including HRS § 91–11.")

On December 24, 2007, the ICA filed its decision. In its decision, the ICA (1) concluded that "the Commission was not required to comply with HRS § 91–11 in issuing its decision on [Petitioner's] application[,]" *E & J Lounge*, 116 Hawai'i at 556, 174 P.3d at 395; (2) decided that the Commission was not required to hold both a public hearing and a contested case hearing on Petitioner's liquor license application, *id.* at 549, 174 P.3d at 388; but (3) noted that, "[p]ursuant to *Singleton v. Liquor Comm'n, County of Hawai'i*, 111 Hawai'i 234, 140 P.3d 1014 (2006), and other supreme court cases, however, [Petitioner] was entitled to seek judicial review of the Commission's decision denying [Petitioner's] application for a liquor license, in accordance with HRS § 91–14[,]" 116 Hawai'i at 555, 174 P.3d at 394, (4) ques-

tioned but did not decide the applicability of HRS § 91–13.5 because the court's "[COL] No. 9 has not been challenged on appeal," *id.* at 543 n. 29, 174 P.3d at 382 n. 29, (5) vacated the April 20, 2006 Judgment of the court, filed pursuant to its FOF and COL and Decision and Order, and (6) remanded the case to the court, and with respect to "[COL] Nos. 11, 12, 13," "instructed [the court] to determine whether the Commission's failure to verify whether proper notice of the public hearing had been sent to neighboring property owners and lessees was harmless, given the Commission's ultimate denial of [Petitioner's] application," *id.* at 556, 174 P.3d at 395.

II.

Petitioner lists the following questions in its Application:

1. Did the ICA err in deciding that hearings before the [Commission] to determine whether to issue individual liquor licenses, required by HRS [§§ ]281–57 and 281–52, are not contested case hearings?

2. Did the ICA err in determining that HRS § 91–14 provided jurisdiction for judicial review of [the Commission's] decision while also determining that no contested case hearing occurred?

On March 24, 2008, the Commission filed a memorandum in opposition to the Applica-

---

ty's appeal is designated as a cross-appeal, even if the party that files subsequently shares the position of the party that filed first.

**15.** On appeal to the ICA the Intervenors contended (1) "HRS [chapter] 281 references HRS § 91 (Chapter 91) *only nine* times" and "in *all nine instances* each HRS [chapter] 281 subsection explicitly stipulates exactly what must be in conformity with HRS [chapter] 91" (emphases in original); (2) "*nowhere* in HRS [chapter] 281 is it specifically stated that there is an appeals process for an *application* public hearing or rehearing for the granting/denying of a liquor license" (emphases added); (3) "[g]iven that the lawmakers did not intend the liquor license application hearings/rehearings to conform with HRS [chapter] 91[,]" the cases cited by Petitioner held to be contested cases, were moot; (4) "the legislative intent was that the *application hearings be public hearings* so the public could speak out[,] rather than contested cases" (emphasis in original); (5)

"[i]f the *application* hearings are considered contested cases, ... then HRS § 91–11 would be violated should the [Commission] have to deny the license by mandate from the public BEFORE the applicant could present argument to the officials rendering the decision as is stipulated in [HRS § ]91–11[ ]" (capitalization and emphasis in original); (6) "HRS § 281–17(b) does not ever reference Chapter 91 nor any appeal to a circuit court[ ]"; (7) "words chosen to express Rule 19.1 were not chosen carefully" in wording that rule to say "[a]ll hearings shall be conducted pursuant to Chapters 91 and 92[.]"

In response, Petitioner answered simply that "HRS [chapter] 91 applies to [Commission] hearings required by HRS §[§ ]281–52 and [–]59" (formatting altered), and that "judicial review of the [Commission] is necessary[,]" (formatting altered).

tion.[16] On March 27, 2008, Intervenors Randi Thomas and Emily Reed filed an untimely response and a motion to allow the filing of said response, which was denied by this court. Certiorari was accepted on April 17, 2008. On April 23, 2008, Intervenors filed a motion for leave to file a supplemental brief which was denied.

On July 3, 2008, this court heard oral argument in this case.

### III.

In sum, the ICA held "that the Commission was required to comply with the more specific 'public hearing' procedures set forth in HRS chapter 281, rather than the 'contested case' procedures delineated in HRS chapter 91, in deciding whether to grant or deny [Petitioner's] liquor-license application[,]" but "agree[d] that the court had jurisdiction pursuant to HRS § 91–14 to review the *denial* of [Petitioner's] liquor-license application." *E & J Lounge,* 116 Hawai'i at 530, 174 P.3d at 369 (emphasis added).

However, it appears that the ICA gravely erred in concluding that the public hearing did not constitute a contested case and that an aggrieved party to a non-contested case hearing could seek judicial review pursuant to HRS § 91–14. Because the public hearing herein constituted a contested case hearing, it was governed by HRS chapter 91. Accordingly, Petitioner was entitled to judicial review under HRS § 91–14, HRS § 91–11 applied to the proceedings on Petitioner's application for a liquor license, and the Commission did not comply with HRS § 91–11.

### IV.

HRS § 281–17 (2007) sets forth the jurisdiction and powers of the county liquor commissions of Hawai'i. That section provides in relevant part:

(a) The liquor commission, within its own county, shall have the sole jurisdiction, power, authority, and discretion, subject only to this chapter:

 (1) To grant, refuse, suspend, and revoke any licenses for the manufacture, importation, and sale of liquors;

 . . . .

(b). . . .

The exercise by the commission or board of the power, authority, and discretion vested in it pursuant to this chapter shall be final and *shall not be reviewable by or appealable to any court or tribunal except as otherwise provided in this chapter or chapter 91.*

(Emphasis added.) *See also Singleton,* 111 Hawai'i at 241, 140 P.3d at 1021 (stating that, "[g]enerally, pursuant to HRS § 281–17 (Supp.2005), [the Commission's] decisions are final subject to judicial review under HRS chapter 91").

HRS chapter 91, codifying the Hawai'i Administrative Procedures Act (HAPA), establishes requisite procedures for an agency conducting contested case hearings. HRS § 91–1 (1993) defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for an agency hearing." That section also states that an "'[a]gency hearing' refers only to such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91–14."

HRS § 91–1(1) declares that an agency "means each state or county board, *commission,* department, or officer *authorized by law to make rules or to adjudicate contested cases,* except those in the legislative or judicial branches." (Emphases added.) The Commission, being a commission of the City and County of Honolulu, authorized by law

---

**16.** The Commission's position in its objection to Petitioner's application for certiorari was that "[t]he decision of the ICA is consistent with case law and the intent of HRS § 281 et seq. [sic]". The Commission contends that "the [l]egislature has determined that [the] purpose for the hearing that is held before the Commission prior to approval or denial of a liquor license application is to gather public input and comments from sur-

rounding neighbors[.]" (Footnote omitted.) Although not clearly articulated in its objection, the Commission presumably infers, based on this contention and its argument that Petitioner does not have a "constitutional due process requirement for a contested hearing[,]" that the Commission was not required to "follow the procedural requirements set out in HRS §§ 91–9 through 91–11[.]"

under HRS § 281–17(a)(4) to "make, amend, and repeal" rules for efficient administration of HRS chapter 281, is an agency for purposes of HRS chapter 91. This court has interpreted these statutory definitions to mean that "[a] contested case is an agency hearing that 1) is required by law and 2) determines the rights, duties, or privileges of specific parties." *Pub. Access Shoreline Haw. v. Hawai'i County Planning Comm'n*, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) [hereinafter, *PASH* ] (internal quotation marks, citation, and brackets omitted).

## V.

▉▉▉▉ As to the first prong of the contested case test, an agency hearing is required by law if there is a "statutory, rule-based, or constitutional mandate for a hearing[.]" *Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 137, 870 P.2d 1272, 1281 (1994). With respect to the instant case, HRS § 281–57 states that "*the [C]ommission shall fix a day for the public hearing of the application . . . and shall give public notice of the hearing.*" (Emphasis added.)

HRS § 281–52 provides that "[*n]o license shall be granted except after a public hearing* by the [Commission] upon notice as prescribed in this chapter[.]" [17] (Emphasis added.) As Petitioner correctly notes, a public hearing pertaining to the issuance of a liquor license is statutorily required under HRS §§ 281–52 and –57 and is therefore "required by law" under the first prong of the contested case test.[18] HRS § 281–57 expressly states that the Commission is required to "fix a day for the public hearing of the application[.]" Additionally, HRS § 281–59 mandates duties that the Commission is obligated to perform at the hearing including the acceptance and consideration of "the application and any protests and objections to the granting thereof" and of "all written or oral testimony[.]" That section also provides that

[u]pon the day of hearing, or any adjournment thereof, the *[Commission] shall consider the application and any protests and objections to the granting thereof, and hear the parties in interest. The commission shall accept all written or oral testimony* for or against the application whether the application is denied, refused, or withdrawn.

(Emphasis added.)

The ICA agreed that "[i]n this case, there is no question that HRS chapter 281 mandates, in most circumstances, that the Commission conduct a 'public hearing' when it considers an application for a liquor license." *E & J Lounge*, 116 Hawai'i at 547–48, 174 P.3d at 386–87 (citing HRS §§ 281–52 and –59). Thus, the public hearing and the continuation of such hearing on April 21, 2005, April 28, 2005, and May 12, 2005 on the issue of Petitioner's liquor license application meet the first prong of the contested case test because the hearing was required by law, *i.e.*, statute, under HRS §§ 281–52 and –57.

## VI.

With respect to the second prong of the contested case test, *Mahuiki* is instructive. *Mahuiki* involved a public hearing on the applications for the project development permit, zoning permit, and special management area use permit for the construction of a condominium apartment and single-family residential dwellings in a coastal management zone. *Id.* at 506, 508, 654 P.2d at 874, 876. In that case, the petitioners appealed from the County of Kaua'i Planning Commission's grant of the permits to the developer. *Id.* at 506, 654 P.2d at 874. This court held that *Mahuiki* involved "a contested case from which an appeal could have been taken" pursuant to HRS § 91–14 because, *inter alia*, the applicant of the development permit "sought to have the legal rights, duties, or privileges of [his company] relative to the

17. A license for purposes of HRS chapter 281 "means any license granted under this chapter." HRS § 281–1 (1993 & Supp.2001). HRS § 281–31 (Supp.2004) lists the fifteen classes of licenses that may be granted by the Commission and the specific privileges and duties associated with each class. Petitioner applied for a Class 5 Dispenser's license, which allows the holder to sell

alcohol for consumption on the premises. HRS § 281–31(f).

18. The preliminary hearing requirement in HRS § 281–57(a) is not questioned and, therefore, is not discussed herein.

development of land in which it held an interest declared over the objections of other landowners and residents of [the area of proposed development]." *Id.* at 513, 654 P.2d at 879 (footnote omitted). This court observed that " 'a public hearing, conducted pursuant to public notice,' has been deemed 'a "contested case" ' within the meaning of HRS § 91–1." *Id.* at 515, 654 P.2d at 880 (quoting *In re Hawaiian Elec. Co.*, 56 Haw. at 264, 535 P.2d at 1105) (emphasis added).

As in *Mahuiki*, the instant case also involves a permit applicant. Petitioner, that seeks "to have the legal rights, duties, or privileges" relative to the sale of liquor at its establishment "declared over the objections of other landowners and residents of" the area where the applicant's establishment is located. *Id.* at 513, 654 P.2d at 879 (footnote omitted). As noted before, a liquor license, such as the Class 5 Dispenser's license sought by Petitioner, "authorize[s] the licensee to sell liquors ... for consumption on the premises." HRS § 281–31(f).

Liquor licenses belonging to other classes confer other various rights and privileges such as the right to manufacture liquor and sell it at wholesale, import and sell liquor, and sell liquor while aboard a vessel. *See* HRS § 281–31. Hence, a liquor license confers legal rights and privileges upon the licensee. A liquor license also imposes multiple legal duties upon the licensee as the licensee is required, *inter alia*, to post the license, maintain the premises according to the conditions prescribed by the Commission, refrain from selling liquor that fails to meet certain quality standards, affix labels to the containers, and refrain from soliciting or accepting a premium or gift from liquor dealers and manufacturers. *See* HRS §§ 281–71 to –85.

HRS § 281–59 provides that the Commission "shall give its decision granting or refusing the application" within fifteen days after the hearing or within thirty days after the hearing if the Commission gives public notice of the extension. Thus, insofar as Petitioner's legal rights, duties, and privileges were determined based on the public hearing regarding the decision to grant or deny a liquor license to Petitioner, the proceeding in the instant case satisfies the second prong of the contested case test.

## VII.

Relevant to its first conclusion, *see supra* page 328, 189 P.3d at 440, the ICA (1) relied on this court's analysis of the statutes, rules, and regulations governing decisions of the Hawaiian Homes Commission (HHC) related to approval of third-party agreements (TPAs) covering Hawaiian Home Lands in *Bush*, *see* 116 Hawai'i at 545–47, 174 P.3d at 384–86, and (2) compared the procedural requirements pertinent to public hearings under HRS chapter 281 to those for contested case hearing conducted pursuant to HRS chapter 91, *id.* at 548–49, 174 P.3d at 387–88.

■ A. It may be noted initially that, as stated by this court in *Bush*,

> [i]f the statute or rule governing the activity in question does not *mandate* a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not "required by law" and do not amount to "a final decision or order in a contested case" from which a direct appeal to circuit court is possible.

76 Hawai'i at 134, 870 P.2d at 1278 (emphasis in original). In that case the appellants sought judicial review of a decision by the HHC to approve TPAs between native Hawaiian lessees of HHC homestead lots and non-Hawaiian third parties. This court held that "[a]lthough the procedures involved in a requested contested case hearing, and the substance of a contested case hearing once it has been granted by the [HHC], are outlined in the administrative rules, the *absolute right* to such hearing is not provided by these same [administrative] rules." *Id.* at 135, 870 P.2d at 1279 (emphasis added).

Thus, this court decided that the rules in that case did not, in and of themselves, amount to a "regulatory mandate" of a contested case hearing but instead amounted to a "conditional right" to a contested case hearing. *Id.* This court also held in *Bush* that "there is no statutory mandate entitling Appellants to a hearing," *id.* at 134, 870 P.2d at 1278, and no constitutional mandate for a hearing because the TPAs did not constitute

a property interest to which due process requirements pertained, *id.* at 135–36, 870 P.2d at 1279–80. It was thus concluded that "[w]ithout a statutory [or] rule-based ... mandate for a hearing, the hearing that took place was not 'required by law' and therefore did not constitute a 'contested case[.]'" *Id.* at 136, 870 P.2d at 1280.

Petitioner is therefore correct in arguing that it is a prerequisite to judicial review under HRS § 91–14 that a case be a contested case in which a hearing is mandated pursuant to statute, rule, or the constitution. (Citing *Bush,* 76 Hawai'i at 137, 870 P.2d at 1281; *Pele Def. Fund v. Puna Geothermal Venture,* 77 Hawai'i 64, 67, 881 P.2d 1210, 1213 (1994) (internal citation omitted)); *Kaniakapupu v. Land Use Comm'n,* 111 Hawai'i 124, 132, 139 P.3d 712, 720 (2006). *See also Citizens Against Reckless Dev. v. Zoning Bd. of Appeals of City,* 114 Hawai'i 184, 197, 159 P.3d 143, 156 (2007) (explaining that HRS chapter 91 provides a "means of seeking review of agency determinations" whereby "[f]inal agency decisions or orders in contested cases may be appealed to the circuit court as provided in HRS § 91–14" (footnote omitted)); *Int'l Bhd. of Painters & Allied Trades, Drywall Tapers, Finishers & Allied Workers Local Union 1944 v. Befitel,* 104 Hawai'i 275, 281, 88 P.3d 647, 653 (2004) (stating that "appellees must have participated in a contested case hearing" in order to be entitled to judicial review under HRS § 91–14 of an agency director's decision (internal quotation marks and citation omitted)). But neither the plain language of the HRS § 91–1 definition of a contested case nor *Bush* indicate that the requisite mandated hearing be referred to as a "contested case hearing" or that the mandating provision state that the hearing be conducted in accordance with chapter 91.

## B.

Despite the fact that a public hearing is statutorily required prior to the issuance of a liquor license, the ICA maintained that "the statutory procedures governing the 'public hearings' that the Commission must hold in considering liquor license applications are very different in nature from the procedures governing a 'contested case' hearing under HRS chapter 91." *E & J Lounge,* 116 Hawai'i at 548, 174 P.3d at 387. The ICA contended that "public hearings required by HRS chapter 281 are designed to elicit public comments, especially from neighbors surrounding the premises for which a liquor license is sought, about the wisdom of allowing a liquor license for the premises."

According to the ICA, such hearings "are not trial-like in nature, but are more akin to the public hearings that legislative committees conduct to receive public input on proposed bills or the public hearings that state and county agencies conduct as part of the process for adopting, amending, or repealing rules." *Id.* Contrasting public hearings on liquor licenses to the types of hearings encompassed by HRS chapter 91, the ICA argued that the latter were "trial-type evidentiary hearing[s]" in which "parties are given the opportunity to present arguments on all issues, submit evidence, and cross-examine witnesses" in a setting that is "adversarial in nature" and "generally more costly, time consuming, and burdensome than public hearings." *Id.* at 548–49, 174 P.3d at 287–88. The ICA cited these purported differences as a basis for its holding that the liquor license hearing was not a contested case hearing.

## C.

Respectfully, this argument by the ICA is inapposite. Under the plain language of HRS § 91–1 a contested case is one in which a hearing is "required by law" to determine "the legal rights, duties, or privileges of specific parties[.]" As noted above, a liquor license confers legal rights and privileges upon the licensee as it "authorize[s] the licensee to sell liquors ... for consumption on the premises." HRS § 281–31(f). Correspondingly, a liquor license imposes legal duties upon the licensee as described in HRS §§ 281–71 to –85. No license may be granted "except after a public hearing" required by HRS § 281–52.[19]

---

19. Contrary to the ICA's assertion that the instant public hearings were not "trial type evidentiary hearing[s]" in which parties are given the "opportunity to present arguments on all issues,

HRS § 91–1 does not contain the requirement that the hearing be a "trial-type evidentiary hearing" or that the hearing exhibit a particular level of "adversarial" quality. Rather, as stated above, there are only two requirements for a hearing to be regarded as a contested case hearing: (1) that the hearing be required by law and (2) that the hearing determine the rights, duties, or privileges of specific parties. *See* HRS § 91–1, *PASH,* 79 Hawai'i at 431, 903 P.2d at 1252 (internal citation omitted). "[W]here the language of the law in question is plain and unambiguous," courts must "give effect to the law according to its plain and obvious meaning." *State v. Gomes,* 117 Hawai'i 218, 228, 177 P.3d 928, 931 (2008) (internal quotation marks and citation omitted). "Contested case," as defined under HRS § 91–1, does not impose a requirement that the hearing be "a trial-type evidentiary hearing." The ICA erred in holding that such a condition is a prerequisite to classifying proceedings as a contested case. Hence, the public hearing in the instant case met the first prong of the contested case test because the agency hearing was mandated by statute.

## VIII.

As to its second conclusion, *see supra* page 328, 189 P.3d at 440, the ICA decided (a) that a contested case hearing was not expressly required by any provision of HRS chapter 281, *see* 116 Hawai'i at 549, 174 P.3d at 388, and in so doing, distinguished *Town v. Land Use Comm'n,* 55 Haw. 538, 524 P.2d 84 (1974), which the ICA interpreted as embodying a "determin[ation] that a contested-case hearing was required ... in addition to the statutorily mandated public hearing ... [,]" *E & J Lounge,* 116 Hawai'i at 550, 174 P.3d at 389, and that based on the legislative history of HRS chapter 91, "the term agency hearing was not intended to incorporate hearings other than contested-case proceedings within its scope[,]" *id.* at 550–51, 174

P.3d at 389–90; (b) without discussion, that the rules promulgated by the Commission did not require the Commission to conduct a contested-case hearing before acting on a liquor license application, *see id.* at 551, 174 P.3d at 390; (c) that "[t]here is no constitutional requirement for a contested case hearing" because Petitioner had no "right" to obtain a liquor license and thus, Petitioner had no "property interest" inherent in a liquor license, *see id.* at 551–52, 174 P.3d at 390–91; and (d) that "other courts ... have ... concluded that the initial grant or denial of a liquor license is not a 'contested case' under the Administrative Procedures Act (APA) of their respective states," *id.* at 553, 174 P.3d at 392 (citing *Kassab v. Acho,* 150 Mich.App. 104, 388 N.W.2d 263, 265 (1986); *Prestige Stations, Inc. v. Washington Liquor Control Bd.,* 33 Wash.App. 669, 657 P.2d 322, 325 (1982)).

### A.

#### 1.

As to item (a) above, the ICA argues that even though a public hearing was required under HRS § 281–57, Petitioner's case was not a contested hearing because "there [was] no express requirement imposed by HRS chapter 281 or any other statute that the Commission hold a contested-case hearing when it considers an application for a liquor license." *E & J Lounge,* 116 Hawai'i at 549, 174 P.3d at 388. Similarly, Intervenors contend that because neither HRS §§ 281–52 nor –59, requiring a public hearing on a license application, expressly state that the hearing must conform with HRS chapter 91 "we must infer that the lawmakers deliberately and knowingly intended that these application hearings/rehearing be 'non-contested case[s]' " without ability to appeal.

The ICA noted that in oral argument, the Intervenors "pointed out ... that pursuant to HRS § 281–91 (Supp.2006), hearings to

submit evidence, and cross-examine witnesses" in a setting that is "adversarial in nature[,]" *E & J Lounge,* 116 Hawai'i at 548–49, 174 P.3d at 387–88, the public hearings are nonetheless adversarial in that the Commission "shall consider the application and any protests and objections to the granting thereof, and hear the parties in

interest[,]" HRS § 281–59(a). Hence, the opposing parties are permitted to present their arguments related to the permit application, and the Commission is required to accept and consider all testimony, written and oral, on those issues. *See id.*

suspend or revoke a liquor license must be held in conformity with HRS chapter 91[,]" which they contrasted to "the statutes governing the granting or denial of an application for a liquor license[, which] expressly require a 'public hearing' with very different notice requirements and procedures...." *E & J Lounge*, 116 Hawai'i at 545, 174 P.3d at 384. The ICA found this argument persuasive and opined that

> [t]hus, under HRS chapter 281, a distinction exists between an initial application for a liquor license, which requires a public hearing but not a contested-case hearing to be held, and a proceeding that affects an existing liquor license, which requires that a contested-case hearing be conducted.

*Id.* at 549–50, 174 P.3d at 388–89.

■ The position of the ICA and the Intervenors cannot be supported. Nothing in the HRS § 91–1 definition of a "contested case" indicates that the statute mandating an agency hearing must refer explicitly to a "contested case" hearing or expressly states that such hearing must be conducted in conformity with HRS chapter 91. Neither the ICA nor the parties have cited any cases supporting such a proposition. Inasmuch as the public hearing fits the definition of a contested-case hearing under established case law, *see supra*, the Commission's denial of Petitioner's application is subject to judicial review pursuant to HRS § 91–14. Further, HRS § 281–17(b) provides in pertinent part that "[t]he exercise by the commission or board of the power, authority, and discretion vested in it pursuant to this chapter shall be final and shall not be reviewable by or appealable to any court or tribunal *except as otherwise provided in this chapter or*

*chapter 91.*" (Emphasis added.) HRS § 281–17(b) does not distinguish among the different types of proceedings that fall within HRS chapter 91. Thus, whether the "exercise ... of the power, authority, and discretion vested in" the Commission is reviewable pursuant to HRS chapter 91 must be determined by the nature of the proceeding involved.[20]

2.

Additionally, the ICA's attempt to distinguish *Town*, where this court held that a petition before the Land Use Commission (LUC) to amend district designation of certain property from agricultural to rural was a contested case, is not persuasive. Contrary to the ICA's contention, *Town* did not require that a contested case hearing be held *in addition* to a public hearing mandated by statute.[21] In that case, a *public hearing* was held on July 16, 1971, on the appellants' petition to the LUC to amend district designation of property. *Town*, 55 Haw. at 539, 524 P.2d at 86. A meeting to render a final decision on the petition was scheduled for October 8, 1971, deferred until November 19, 1971, and finally held on January 7, 1972. *Id.* at 539–40, 524 P.2d at 86. This court held that it was "of the opinion that the [case was] a 'contested case.'" *Id.* at 548, 524 P.2d at 91.

Like the instant case. *Town* involved a public hearing before a commission as required by statute. The ICA stated that this court "determined that the adjoining property owner had a property interest in the district-boundary amendment and was therefore entitled to a contested-case determination of

---

**20.** Additionally, this addresses Intervenor's contention that the public hearing was subject to HRS chapter 92, commonly known as the "Sunshine Law." This argument is untenable in that chapter 92, by its own terms is inapplicable to contested case hearings. *See* HRS § 92–6(a)(2) (1993 & Supp.1998) (providing that chapter 92 does not apply to "adjudicatory functions ... governed by sections 91–8 and 91–9 [*i.e.*, contested case hearings]"); *see also Chang v. Planning Comm'n of Maui County*, 64 Haw. 431, 457, 643 P.2d 55, 64 (1982) (holding that because applications for Special Management Area permits are "adjudicatory functions," *i.e.*, contested case hearings, the Maui Planning Commission's

"closed deliberations on [the] permit application and on appellant's subsequent motion and petition were permissible under HRS § 92–6(a)(2) despite the open-meeting mandate of HRS § 92–3.")

**21.** The ICA maintained that "[t]he crux of [Petitioner's] appeal is whether the Commission was required to conduct both the public hearing required by HRS chapter 281 *and* a contested-case hearing that complied with the requirements of HRS §§ 91–9 to 91–13 in denying [Petitioner's] application[.]" *E & J Lounge*, 116 Hawai'i at 549, 174 P.3d at 388 (emphasis in original).

his rights [.]" *E & J Lounge*, 116 Hawai'i at 550, 174 P.3d at 389 (citing *Town*, 55 Haw. at 548–49, 524 P.2d at 91–92). The ICA then maintained that the instant case is distinguishable from *Town* because "[Petitioner] has no 'property interest' in a possible liquor license." *Id.*

However, *Town* does not stand for the proposition that a property interest is a prerequisite for a contested case hearing. Rather, *Town* merely acknowledged that the appellant landowner there had "a property interest in the amending of a district boundary," *id.* at 549, 174 P.3d at 389, and employed this factor with respect to the second prong requirement for contested cases—that "the legal rights, duties, or privileges of specific parties" be determined as required by law, HRS § 91–1.

*Town* is akin to the instant case in that both involve a statutorily mandated public hearing before a commission. As noted above, that the appellant in *Town* was deemed to have a property interest with respect to the issue before the commission, is not decisively determinative of whether a case is a contested case. Thus, there is no persuasive basis for distinguishing *Town* from the instant case. Accordingly, the holding in *Town* that the commission there was required to comply with the contested case provisions contained in chapter 91, is applicable to the instant case.[22] *See also In re Hawaiian Elec. Co.*, 56 Haw. at 264, 535 P.2d at 1105 (reaffirming that "a *public hearing*, conducted pursuant to published notice, was a contested case within the meaning of HRS [§ ]91–1" (internal quotation marks omitted) (emphasis added)); *Mahuiki*, 65 Haw. at 516, 654 P.2d at 880 (noting that "a *public hearing*, conducted pursuant to a public notice, has been deemed a contested case within the meaning of HRS § 91–1" (citations and internal quotation marks omitted) (emphasis added)); *PASH*, 79 Hawai'i at 432, 903 P.2d at

1253 (holding that the Planning Commission's public hearing on a Special Management Area Use Permit was a contested case hearing and not rule-making because the process "is adjudicative of legal rights of property interests in that it calls for the interpretation of facts applied to rules that have already been promulgated" (citation, internal quotation marks, and emphases omitted)).

### 3.

The ICA also contended that there is "a legislative intent to exempt the Commission from the contested-case procedures set forth in HRS chapter 91 when it decides applications for liquor licenses and to require the Commission to hold a public hearing in compliance with HRS chapter 281 instead." *E & J Lounge*, 116 Hawai'i at 550, 174 P.3d at 389. As support for its proposition, the ICA asserts that HRS chapter 91 was intended to apply to those agency hearings "'immediately prior to the stage when judicial review becomes available[,]'" *id.* (quoting Hse. Stand. Comm. Rep. No. 8, in 1961 House Journal, at 656), under HRS § 91–14 and that such hearings were contested case hearings or "evidentiary hearing[s] required by either statute, rule, the United States Constitution, or the Hawai'i Constitution[,]" *id.* (internal quotation marks and citation omitted).

██ But, as noted by the ICA dissent in *E & J Lounge*, 116 Hawai'i at 558–59, 174 P.3d at 397–98 (Nakamura, J., dissenting), the legislative history of HRS chapter 91 demonstrates the intent that chapter 91 apply to liquor license hearings like the one in the instant case. Legislative history may be used to confirm interpretation of a statute's plain language. *See Blaisdell v. Dep't of Pub. Safety*, 113 Hawai'i 315, 319 n. 5, 151 P.3d 796, 800 n. 5 (2007) (citing "[t]he legislative history of HRS § 607–3[to] confirm[ ] our decision"); *State v. Entrekin*, 98 Hawai'i

---

22. HRS § 91–1 states that a contested case is "a *proceeding* in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." (Emphasis added.) A "proceeding" is defined as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry

of judgment." *Black's Law Dictionary* 1241 (8th ed.2004). Analogously, the holding in *Town*, 55 Haw. at 548, 524 P.2d at 91, that the case was a contested case, applied to "all acts and events between the time of commencement and the entry of judgment" and therefore included the statutorily mandated public hearing, as it does here.

221, 227, 47 P.3d 336, 342 (2002) (stating that, although this court "ground[ed its] holding in the ... plain language [of HRS § 286–163], [it] nonetheless note[d] that [the statute's] legislative history confirms [its] view" (internal citation omitted)).

Act 103, 1961 Haw. Sess. L., Act 103 §§ 1–21, at 85–91, was codified as HRS chapter 91. As the dissenting opinion elucidated, a review of the associated House Committee Report demonstrates that the legislature specifically intended the provisions of that chapter to apply to liquor license *application denials* as follows:

> The [Commission] raised the question whether denial of a liquor license application came under [the definition of a contested case]. A summary submitted by the [Commission] indicates that there is judicial review in 27 states and no judicial review in 21 states although *it has been urged by the liquor commission to exclude matters of liquor license application from under the definition of a "contested case". There has been no real showing why the liquor license application should be excluded and your Committee intends said definition to include the denial of said liquor license application.*

*E & J Lounge,* 116 Hawai'i at 559, 174 P.3d at 398 (Nakamura, J., dissenting) (quoting Hse. Stand Com. Rep. No. 8, in 1961 House Journal, at 653–61) (emphasis added).

### B.

■ As to item (b) above, Petitioner points out that the Rules of the Liquor Commission of the City and County of Honolulu (Rules) state that "[a]ll hearings shall be conducted pursuant to Chapters 91 and 92, [HRS], and [the Rules]." Rules § 3–81–19.1 (2005). Thus, consistent with the construction of HRS § 281–17, the Rules mandated that the public hearing at issue in this case follow HRS chapter 91. "If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning." *Citizens*

*Against Reckless Dev.,* 114 Hawai'i at 194, 159 P.3d at 153. Thus, under the plain language of section 3–81–19.1 of the Rules, HRS chapter 91 provisions apply to Commission hearings.[23]

### C.

As to item (c) above, inasmuch as there was a statutory mandate it is not necessary to address whether there existed a rule-based or constitutional mandate to hold a contested case hearing. *Cf. Keahole Def. Coalition, Inc. v. Bd. of Land & Natural Res.,* 110 Hawai'i 419, 432, 134 P.3d 585, 598 (2006) (agreeing with the circuit court's holding that the appellant, with economic interests in opposing the proposed energy facility expansion at issue before the Board of Land and Natural Resources, "does not have a due process right to a contested case hearing because its economic interests do not constitute 'property' within the meaning of the due process clauses of the federal and state constitutions" (internal quotation marks, citation and emphasis omitted)).

### D.

As to item (d) above, the ICA cites *Kassab,* 388 N.W.2d at 265, and *Prestige Stations,* 657 P.2d at 325, as cases "that have considered the issue before us [and] have concluded that the initial grant or denial of a liquor license is not a 'contested case' under the [APA] of their respective states." *E & J Lounge,* 116 Hawai'i at 553, 174 P.3d at 392.

These cases are inapposite. *Kassab* held that the liquor license case there was not a contested case "because the statute governing the issuance" of such licenses "does not require that the selection of a licensee be preceded by notice and the opportunity for a hearing." 388 N.W.2d at 265 (citing *T.D.N. Enters., Inc. v. Liquor Control Comm'n,* 90 Mich.App. 437, 280 N.W.2d 622 (1979)). In contrast, here, HRS § 281–52 and the HRS § 91–1 definition of a contested case both require notice and hearing and HRS § 281–17 makes express reference to HRS chapter 91.

---

**23.** Hence, Intervenors' argument that the Commission was not careful in wording rule 19.1 to say that "[a]ll hearings shall be conducted pursuant to Chapters 91 and 92" is not persuasive.

In *Prestige Stations*, contested cases were statutorily defined by Revised Code of Washington (RCW) § 34.04.010(3) as "includ[ing] all cases of licensing and rate making in which an application for a license or rate change is denied except as limited by RCW [§ ]66.08.150[.]" 657 P.2d at 325 (quoting RCW § 34.04.010(3)). RCW § 66.08.150, in turn, provided that "action, order or decision of the board as to any denial of an application for the reissuance of a permit or license as to any revocation, suspension, or modification of any permit or license shall be a contested case[.]" The *Prestige Stations* court held that because the Washington statutes only identified "reissuance" of permits and licenses as contested case hearings, "[r]eview of denial of an *initial* liquor license application" was not a contested case and not subject to the APA. 657 P.2d at 325 (emphasis added).

Again, here, the operative limiting language in *Prestige Stations* is not contained in the HRS § 91–1 definition of a contested case. But as observed *supra*, because the license proceeding at issue meets that definition, it is a contested case under Hawai'i law and differing definitions of a contested case in effect in other jurisdictions are not material.

## IX.

With regard to its third conclusion, *see supra* page 328, 189 P.3d at 440, the ICA states that "[i]n light of [its] conclusion that the Commission was not required to hold a contested-case hearing on [Petitioner's] application for a liquor license, [it is] inclined to conclude, based on the literal language of HRS § 91–14, that [Petitioner] was not entitled to seek judicial review pursuant to HRS § 91–14[.]" *E & J Lounge*, 116 Hawai'i at 553, 174 P.3d at 392. However, it posited that parties in non-contested-case hearings could "seek[ ] other judicial review provided by law[,]" *id.* (citing *Bush*, 76 Hawai'i at 136–37, 870 P.2d at 1280–81), such as by way of an appellate court's "inherent power of review[,]" *id.* at 554 n. 35, 174 P.3d at 393 n. 35 (noting that, in *Prestige Stations*, although review was not available through Washington's APA, it was available under the court's inherent power, in order to protect citizens'

fundamental right to be free from "administrative action that is arbitrary, capricious, or contrary to law" (quoting *Prestige Stations*, 657 P.2d at 327)).

Nevertheless, citing *Mahuiki* and *Singleton*, the ICA states that this court "has concluded that a 'public hearing' held in accordance with statutory requirements qualified as a 'contested case' for purposes of HRS § 91–14 judicial review." *Id.* at 554, 174 P.3d at 393. The ICA announced that

[i]n light of *Singleton*, *Mahuiki*, and prior supreme court precedent, ... an applicant who is denied a liquor license following a "public hearing" held in compliance with HRS chapter 281 is entitled to seek judicial review pursuant to HRS § 91–14.

*Id.* at 555, 174 P.3d at 394. However, those cases do not support the ICA's proposition that a public hearing as in the instant case is a "contested case" subject to judicial review under HRS § 91–14 but not a "contested case" for purposes of certain other sections contained in HRS chapter 91.

As indicated before, in *Mahuiki*, the petitioners appealed from the County of Kaua'i Planning Commission's grant of permits for the development of residential dwellings in a coastal management zone. 65 Haw. at 506, 654 P.2d at 874. The issues raised there were whether the appellants' "interests were injured" and whether the appellants "were involved in the administrative proceeding that culminated in the unfavorable decision" such that they had standing to invoke judicial review, and whether the Planning Commission complied with the directives of the Coastal Zone Management Act when it granted the permit. *Id.* at 514–16, 654 P.2d at 879–81.

*Mahuiki* recognized that "the pertinent inquiry at the outset is whether there was a final decision and order in a contested case from which an appeal could have been taken." *Id.* at 513, 654 P.2d at 879. This court held "[*that the proceeding before the Planning Commission was a contested case is obvious* " as the permit applicant "*sought to have the legal rights, duties, or privileges of This company] relative to the development of land in which it held an interest declared*

*over the objections of other landowners and residents of [the area]."* *Id.* (emphases added). This court also held that *Mahuiki* was a contested case because it "recently confirmed that a '[special management area] use permit application proceeding was a "contested case" within the meaning of HRS Chapter 91.'" *Id.* (quoting *Chang,* 64 Haw. at 436, 643 P.2d at 60). Thus, *Mahuiki* applied the contested case test to the public hearing on the permit application and determined that the hearing was a contested case subject to judicial review under HRS § 91–14. Contrary to the ICA's contention, *Mahuiki* did not hold that public hearings "held in accordance with statutory requirements" were *per se* "contested cases" for purposes of HRS § 91–14. *E & J Lounge,* 116 Hawai'i at 554, 174 P.3d at 393.

*Singleton* also does not advance such a position. In that case, the appellant appealed the Commission's grant of a liquor license to the applicant for an establishment at the Kona Marketplace Shopping Center on the island of Hawai'i. 111 Hawai'i at 237, 140 P.3d at 1017. The appellant challenged the grant of the license on the alleged grounds that the Commission erroneously interpreted HRS §§ 281–57 and –59 governing the notice requirements to property owners and lessees in the vicinity and the number of majority votes needed to require the Commission to deny the license application. *Id.* at 241–45, 140 P.3d at 1021–25. Whether the case was a contested case subject to judicial review under HRS § 91–14 was not raised as an issue by either party.

*Singleton* did state that the Commission's "decisions are final subject to judicial review under HRS chapter 91" and cited HRS § 91–14, which establishes the bases for judicial review in conjunction with HRS § 281–17. *Id.* at 241 & 241 n. 13, 140 P.3d at 1021 & 1021 n. 13. However, it cannot be reasonably inferred, as the ICA suggests, that *Singleton* stands for the proposition that any "'public hearing' held in accordance with statutory requirements" automatically constituted a "contested case" for purposes of HRS § 91–14 judicial review. *E & J Lounge,* 116 Hawai'i at 554, 174 P.3d at 393. Nor does *Singleton* suggest dispensing with the re-

quirements established under the HRS § 91–1 "contested case" definition that a "contested case" be a proceeding that is "required by law" and that determines the "legal rights, duties, or privileges of specific parties[.]"

Moreover, *Singleton* does not support the ICA's proposition that a case may be considered a "contested case" to which HRS § 91–14 applies, but to which the other sections of chapter 91 such as HRS § 91–11 are inapplicable. The ICA stated that the procedures followed by the Commission in *Singleton* appeared to be the same as those followed by the Commission in the instant case. *E & J Lounge,* 116 Hawai'i at 555, 174 P.3d at 395. The ICA concluded that because in *Singleton,* this court "did not suggest that the procedures [used there] were deficient because they failed to comply with the contested-case procedures set forth in HRS chapter 91[,] ... the proceedings before the county liquor commissions are governed by HRS chapter 281, rather than the procedural requirements of HRS chapter 91." *Id.* This conclusion is not supported by the facts of *Singleton.*

That case did not recite any arguments that the Commission had failed to act in accordance with contested case requirements prescribed by HRS chapter 91. Thus, it cannot be said that because this court did not discuss the applicability of HRS chapter 91 contested-case rules to the Commission, that the Commission is excused from complying with those rules.

## X.

### A.

In their brief to the ICA, Intervenors argued that to deem Petitioner's case a contested case subject to HRS chapter 91 would be problematic in that the requirement in HRS § 91–11, that the agency officials personally consider the record before voting on an issue conflicts with the mandatory majority rejection rule in HRS § 281–59. To reiterate, HRS § 91–11 provides that

[w]henever in a contested case the officials of the agency who are to render the final decision have not heard and examined all of the evidence, the decision, if adverse to

a party to the proceeding other than the agency itself, *shall not be made until a proposal for decision containing a statement of reasons and including determination of each issue of fact or law necessary to the proposed decision has been served upon the parties, and an opportunity has been afforded to each party adversely affected to file exceptions and present argument* to the officials who are to render the decision, who shall personally consider the whole record or such portions thereof as may be cited by the parties.

(Emphasis added.) Also to reiterate, HRS § 281–59(a) provides in relevant part that:

Within fifteen days after the hearing, or within thirty days thereafter if in its discretion the [C]ommission extends the fifteen days to thirty days, and gives public notice of same, *the [C]ommission shall give its decision granting or refusing the application; provided that if a majority of the:*

 (1) Registered voters for the area within five hundred feet of the nearest point of the premises for which the license is asked; or

 (2) Owners and lessees of record of real estate and owners of record of shares in a cooperative apartment within five hundred feet of the nearest point of the premises for which the license is asked;

*have duly filed or caused to be filed their protests against the granting of the license,* or if there appears any other disqualification under this chapter, *the application shall be refused. Otherwise the [C]ommission may in its discretion grant or refuse the same.*

(Emphases added.)

Intervenors posit that "[i]f the application hearings are considered contested cases ...[,] then HRS § 91–11 would be violated" if the majority of persons described in HRS § 281–59 filed protests such that the Commission was required under HRS § 281–59 to refuse the application. In short, Intervenors appear to argue that refusal of the application under HRS § 281–59 would preclude the application of HRS § 91–11 and thereby "violate the 'rights and privileges' "

granted to Petitioners via that section. It should be noted that Intervenors did not raise this issue in the court and therefore this issue was not addressed by the other parties or decided by the court. Intervenors raised it for the first time in their opening brief to the ICA. Neither the ICA majority nor the dissent addressed this specific issue in their opinions.

█ Relatedly, this court has said, "Legal issues not raised in the trial court are ordinarily deemed waived on appeal." *Kau v. City & County of Honolulu,* 104 Hawai'i 468, 475 n. 6, 92 P.3d 477, 484 n. 6 (2004) (internal quotation marks and citation omitted). The rationale behind this rule is to "prevent[ ] appellants from presenting new legal theories as to why they should have prevailed at trial." *State v. Moses,* 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003). "The duty of this court, as of every other judicial tribunal is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Wong v. Bd. of Regents,* 62 Haw. 391, 395, 616 P.2d 201, 204 (1980). *See also In re Hawaiian Elec. Co.,* 56 Haw. at 267, 535 P.2d at 1107 (holding that it is not "deem[ed] advisable to decide [a] particular issue, inasmuch as it was not briefed and argued before this court"). Thus, this issue raised by the Intervenors need not be reached.

**B.**

Nevertheless, in light of the fact that the HRS § 281–59(a) provision relating to rejection of an application by adjacent voters, owners, and lessees is an integral part of the public hearing requirement in liquor license applications under HRS §§ 281–52 and –57 that was raised and was discussed *supra* and that this case must be remanded, the issue of whether that section conflicts with HRS § 91–11, as Intervenors claim, must be addressed. HRS §§ 91–11 and 281–59 may be viewed as concerning the same subject matter, *i.e.,* as strictures imposed in the hearings before the Commission applicable to license

applications, and therefore, should be construed *in pari materia*. The phrase *in pari materia* refers to things that are "[o]n the same subject" or "relate[ ] to the same matter." *Black's Law Dictionary* at 806.

■ HRS § 1–16 (1993) states that "[l]aws *in pari materia*, or upon the same subject matter, shall be construed with reference to each other." *See also Honda ex rel. Kamakana v. Bd. of Trustees*, 108 Hawai'i 338, 344, 120 P.3d 237, 243 (2005) (citing HRS § 1–16 and reading HRS §§ 88–27 and –127 *in pari materia* ); *State v. Hoshijo ex rel. White*, 102 Hawai'i 307, 317, 76 P.3d 550, 560 (2003) (using HRS § 1–16 as authority for its decision to read HRS §§ 489–3 and 498–2 *in pari materia* ); *Black's Law Dictionary* at 806 ("It is a canon of construction that statutes that are *in pari materia* may be construed together, so that inconsistencies in one statute may be resolved by looking at another statute on the same subject."). Thus, "[w]hat is clear in one statute may be called upon in aid to explain what is doubtful in another." *Barnett v. State*, 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999) (internal quotation marks and citation omitted); *see also Kienker v. Bauer*, 110 Hawai'i 97, 109, 129 P.3d 1125, 1137 (2006) (giving effect to both a statute that prohibited joint and several liability for government entities and a statute that established exceptions allowing for joint and several liability, stating that "the broad language of [the prohibitory statute] may be construed as abolishing the government's joint and several liability unless an exception such as that embodied in [the statute enumerating exceptions] applies").

■ Reading the statutes *in pari materia*. HRS § 281–59 establishes that "the commission shall give its decision granting or refusing the application" but subject to the condition that if a majority of adjacent registered voters, owners, or lessees of record file protests, the application "shall be refused." Thus, if in the course of the proceedings the Commission determines that the requisite majority opposes the application, the Commission is mandated by HRS § 281–59(a) to refuse the application. On the other hand, HRS § 281–59 provides that *"otherwise* the commission may in its discretion grant or refuse" the application. (Emphasis added.) For the reasons stated before, the required public hearing is a precondition to the grant or refusal of the license and, consequently, invokes HRS chapter 91 because the rights, privileges, and duties of the applicant are thereby determined. Hence, if not disapproved by a majority of the requisite persons and entities, the Commission must grant or refuse the application, *see* HRS § 281–59 (directing that "[w]ithin fifteen days after the hearing … the [C]ommission shall give its decision granting or refusing the application"), in accordance with HRS chapter 91.

It may be noted that pursuant to HRS § 281–57(b), "protests or objections against the issuance of the license … shall be filed … *at or before the time of hearing.*" (Emphasis added.) Hence, any procedural conflict between the exercise of the Commission's authority pursuant to HRS chapter 91, including HRS § 91–11, and the majority refusal rule under HRS § 281–57(b) would be minimal, if existent at all. Of course, any controversy concerning notice to adjacent parties and the tabulation of the votes with respect to the majority refusal rule would be readily determined as part of the HRS chapter 91 proceeding. *Cf. Singleton*, 111 Hawai'i at 241, 140 P.3d at 1021 (reviewing issue of whether government was an "owner" required to be given notice under HRS § 281–57, in connection with controversy regarding tabulation of protest votes pursuant to HRS § 91–14). Moreover, inasmuch as the public hearing is part of the "proceeding" pursuant to HRS § 91–1, *see supra* note 22, the Commission is free to combine or integrate the requirements of HRS § 281–59(a) into the public hearing in the sound exercise of its discretion.

Consequently, it is possible to give effect to both statutes as described above insofar as a public hearing on a license application must be regarded as a contested case subject to the requirements of HRS chapter 91. *See Richardson v. City & County of Honolulu*, 76 Hawai'i 46, 55, 868 P.2d 1193, 1202 (1994) ("[W]here the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." (Internal quotation marks and

citation omitted.)). Intervenors and the Commission urge that, except as expressly designated, HRS chapter 281 should apply to the exclusion of all contested case provisions of chapter 91, including HRS § 91–11. However, this jurisdiction's case law firmly establishes that the HRS chapter 91 contested case test applies in conjunction with agency actions such as those undertaken by the Commission in the grant or refusal of an application. *See Kaniakapupu*, 111 Hawai'i at 132, 139 P.3d at 720 (reiterating that "a contested case is an agency hearing that 1) is required by law and 2) determines the rights, duties, or privileges of specific parties" (quoting *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252 (internal quotation marks and citation omitted)) (emphasis and brackets omitted)); *Kinkaid v. Bd. of Review of City & County of Honolulu*, 106 Hawai'i 318, 321, 104 P.3d 905, 908 (2004) (noting that in order for this court to exercise appellate jurisdiction over an appeal from agency action "the proceeding that resulted in the unfavorable agency action must have been a 'contested case' hearing—*i.e.*, a hearing that was 1) 'required by law' and 2) determined the 'rights, duties, and privileges of specific parties'" (quoting *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252)); *Pele Defense Fund*, 77 Hawai'i at 68, 881 P.2d at 1214 (holding that hearings held by the State Department of Health "were 'contested cases' because they were 'proceedings in which the legal rights, duties or privileges of specific parties were required by law to be determined after an opportunity for agency hearing'" (quoting HRS § 91–1(5) (brackets omitted))); *cf. Ko'olau Agr. Co., Ltd. v. Comm'n of Water Res. Mgmt.*, 83 Hawai'i 484, 493, 927 P.2d 1367, 1376 (1996) (holding that this court

lacked appellate jurisdiction to review the Commission of Water Resource Management's designation of a Water Management Area (WMA) because "[a] WMA designation ... is not a contested case because it does not determine 'the legal rights. duties, or privileges of specific parties'" (quoting HRS § 91–1(5)); *Bush*, 76 Hawai'i at 134, 870 P.2d at 1278 (holding that "[i]f the statute or rule governing the activity in question does not mandate a hearing prior to the administrative agency's decision-making, the actions of the administrative agency are not 'required by law' and do not amount to 'a final decision or order in a contested case' from which a direct appeal to circuit court is possible" § emphasis and citations omitted)).

## XI.

As previously noted, the court, in its Decision and Order, "reversed" the Commission's denial of Petitioner's application and remanded the case to the Commission with instructions to: (1) "determine whether [Petitioner made] the proper notice as required under HRS § 281–57"[24] providing that "the Commission may accept additional evidence and argument, and may hold additional hearings regarding the proper number or persons required to be served under HRS § 281–57" in doing so, and "[u]pon determining the proper number of persons required to be served under HRS § 291–57[sic], the Commission may grant or deny the Application based on its ruling, may require [Petitioner] to serve all persons required to be served under HRS § 281–59 [sic [25]], and/or hold additional public hearings."[26] As observed before, these issues were not raised on appeal to the ICA by any party.[27] Also, as previously indicated,

24. This addresses the Intervenors' contention that Petitioner did not mail notices to the requisite number of neighboring owners and lessees of record and registered voters, as required under HRS § 281–57. *See supra* note 9.

25. Presumably, the court meant that if the Commission decided to hold additional hearings, it could require Petitioner to mail notice of such hearings to neighboring tenants and lessees as required under HRS § 281–57.

26. Only the second part of the court's decision and order is implicated by the points discussed by the ICA inasmuch as the ICA does not raise

any questions regarding how to calculate the number of people who must be mailed notice pursuant to HRS § 281–57.

27. In addition, the ICA noted several differences between the 1961 Model State Administrative Procedures Act (MSAPA) and HRS chapter 91, none of which are relevant to the issues raised in this appeal. *E & J Lounge*, 116 Hawai'i at 536 n. 21, 174 P.3d at 375 n. 21. These differences include differences in the definition of "contested case," "license," and "licensing" that are not relevant to the disposition of this case. *See id.* Also, the ICA noted that the MSAPA was amend-

the ICA vacated the court's findings, conclusions and order, but instructed the court to determine whether any defect in notice "was harmless given the Commission's ultimate denial of [Petitioner's] application." Contrary to the ICA's disposition, HRS chapter 91 does apply. In light of the foregoing, the court's instructions must be reinstated. HRS § 91–14(g) authorizes a court to remand an administrative agency case with instructions for further proceedings.

ed in 1981, but that Hawai'i has not adopted those amendments. *Id.*

28. Specifically, HRS § 91–9 requires in pertinent part that

(a) In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.
(b) The notice shall include a statement of:
(1) The date, time, place, and nature of hearing;
(2) The legal authority under which the hearing is to be held;
(3) The particular sections of the statutes and rules involved;
(4) An explicit statement in plain language of the issues involved and the facts alleged by the agency in support thereof; provided that if the agency is unable to state such issues and facts in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a bill of particulars shall be furnished;
(5) The fact that any party may retain counsel if the party so desires and the fact that an individual may appear on the individual's own behalf, or a member of a partnership may represent that partnership, or an officer of authorized employee of a corporation or trust or association may represent the corporation, trust, or association.

29. HRS § 91–9.5 instructs:

(a) *Unless otherwise provided by law,* all parties shall be given written notice of hearing by registered or certified mail with return receipt requested at least fifteen days before the hearing.
(b) *Unless otherwise provided by law,* if service by registered or certified mail is not made because of the refusal to accept service or the board or its agents have been unable to ascertain the address of the party after reasonable and diligent inquiry, the notice of hearing may be given to the party by publication at least once in each of two successive weeks in a newspaper of general circulation. The last published notice shall appear at least fifteen days prior to the date of the hearing.
(Emphases added.)

## XII.

### A.

Related to the court's instructions on remand, it should be noted that HRS chapter 91 also contains notice provisions, namely sections 91–9 (1993)[28] and 91–9.5 (1993).[29] However, for purposes of conducting a public hearing on a liquor license application, the notice provisions of HRS § 281–57[30] control over those in HRS § 91–9.5. HRS § 91–

30. HRS § 281–57 provides instruction to the Commission and applicants for liquor licenses related to the early stages of an application. In relevant part, it states that

(b) If no preliminary hearing is had or if the publication is not denied upon a preliminary hearing, the [C]ommission shall fix a day for the public hearing of the application (other than an application for an alcohol license or a license in classes 7 to 10 and 13) and shall give public notice of the hearing at least once in each of two consecutive weeks, in the county, the date of the hearing to be not less than forty-five days after the first notice. The notice shall require that all protests or objections against the issuance of the license applied for shall be filed with the administrator of the [C]omission at or before the time of hearing. Before giving the notice the [C]ommission shall collect from the applicant the cost of giving the public notice or require a deposit to cover the same.
(c) Immediately upon the [C]ommission's fixing a day for the public hearing of the application, *the applicant shall mail a notice setting forth the time and place of the hearing* on the application to each of the following:
(1) *Not less than two-thirds of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment or to those individuals on the list of owners as provided by the managing agent or governing body of the shareholders association situated within a distance of five hundred feet* from the nearest point of such real estate or cooperative apartment; *provided that in meeting this requirement, the applicant shall mail a notice to not less than three-fourths of the owners and lessees of record of real estate and owners of record of shares in a cooperative apartment situated within a distance of one hundred feet* from the nearest point of the premises for which the license is asked. Notice by mail may be addressed to the last known address of the person concerned or to the address as shown in the last tax return filed by the person or the person's agent or representative.
(2) In counties with a population of two hundred-fifty thousand or more, *not less than two-thirds of the registered voters resid-*

9.5(a), pertaining to the service of notice of a contested case hearing, directs that "[u]nless *otherwise provided by law*, all parties shall be given written notice of hearing by registered or certified mail with return receipt requested at least fifteen days before the hearing." [31] (Emphasis added.) The mandate of HRS § 281–57, requiring that "[u]pon the [C]ommission's fixing a day for the public hearing of the application, the applicant shall mail a notice setting forth the time and place of the hearing on the application, to not less

> *ing within, and small businesses situated within, a distance of five hundred feet* from the nearest point of the premises for which the license is asked; *provided that in meeting this requirement, the applicant shall mail notices to not less than three-fourths of the registered voters residing within, and small businesses situated within, a distance of one hundred feet* of the premises for which the license is asked This paragraph shall not apply to any applicant that is a hotel as defined in section 486K–1, a restaurant, or a convenience store. A notice sent pursuant to this paragraph shall be addressed to the "occupant" of the residential unit or small business[.]

(Emphases added.)

**31.** Of the contested case hearing provisions, only HRS § 91–9.5 contains an "unless otherwise provided" caveat. Additionally, there is no conflict between any other contested case hearing statute and the provisions of HRS chapter 281. Therefore, other than HRS § 91–9.5, both the statutes related to liquor commission hearings specifically, and those related to contested case hearings generally, may be given effect. *See Richardson*, 76 Hawai'i at 55, 868 P.2d at 1202 ("[W]here statutes simply overlap in their application, effect will be given to both if possible...." (Internal quotation marks and citations omitted.)).

This addresses the ICA's argument that the incompatibility of the notice requirements in HRS § 91–9.5 with those mandated in HRS § 281–57 indicated that the Commission was required to follow the provisions for a "public hearing" rather than a contested case hearing. *E & J Lounge*, 116 Hawai'i at 548–49, 174 P.3d at 387–88 (stating that "[t]he procedures that govern the conduct of contested case hearings, as set forth in HRS chapter 91, call for a trial-type evidentiary hearing in which parties admitted to the case are entitled to written notice by registered or certified mail, at least fifteen days before the hearing," pursuant to HRS § 91–9(b), *see supra* note 28, and that, "[m]oreover, no statutory requirement exists that public notice of the proceeding be published in a newspaper and mailed to interested parties, such as residents, voters, and businesses who reside in or are situated in the area surrounding the premises for

than two-thirds of the" owners and lessees of record, registered voters and small businesses located within five hundred feet of the premises, including three-fourths of the same entities situated within one hundred feet of the premises, is precisely what HRS § 91–9.5 contemplates when it directs that the procedures in HRS § 91–9.5 be followed "unless otherwise provided by law."

The legislative history of HRS § 91–9.5 supports this conclusion.[32] The House Com-

which a liquor license is sought" (internal quotation marks omitted)).

Also, this addresses the ICA's apparent concern that "contested-case proceedings are generally more costly, time consuming, and burdensome than public hearings." *Id.* at 549, 174 P.3d at 388. However, these considerations are not germane in determining whether the hearing on Petitioner's application was a contested case hearing. Moreover, inasmuch as HRS § 281–57, and not HRS § 91–9.5, applies in contested cases before the Commission, any portion of the greater expense of contested case hearings attributable to serving notice under the latter statute is ameliorated.

**32.** HRS chapter 91 was patterned after the 1959 draft MSAPA, which was passed in 1961. *See* Stand. Comm. Rep. No. 8, in 1961 House Journal at 654. The Comment on the 1981 MSAPA notes that the last clause in the definition of "party," " 'properly seeking and entitled ...' was intended to confer upon would-be intervenors the right to seek judicial review if their petitions for intervention were denied." 15 ULA at 3 (2000). Hence, the 1981 MSAPA was amended to include distinct definitions for (1) "party to agency proceedings[,]" 15 ULA § 1–102(6) (2000), and (2) "party to judicial review or civil enforcement proceedings[,]" 15 ULA § 1–102(7) (2000). The amendment was deemed necessary because "the 1961 Revised Model Act's concept of persons 'properly seeking and entitled ...' could lead to awkward consequences, if included in the definition of 'party.' For example, *it could compel a person serving copies of pleadings to ascertain whether each potential recipient of service, known or unknown, is 'properly seeking and entitled ....'* " 15 ULA Comment on § 1–102 (2000) at 14 (emphasis added).

The ICA opinion echoed the concern stated above, noting that "contested-case proceedings are generally more costly, time consuming, and burdensome than public hearings." *E & J Lounge*, 116 Hawai'i at 549, 174 P.3d at 388. The additional costs of a contested case hearing include sending notice by registered mail as required under HRS § 91–9.5. However, as already noted, this concern is unfounded given the statutory construction herein.

mittee on Consumer Protection and Commerce "amended the bill to provide that *if laws dealing with state agencies specifically provide for different methods of giving notice, such provisions will control.*" Stand. Comm. Rep. No. 388–76, in 1976 House Journal at 1448 (emphasis added). Similarly, the Senate Judiciary Committee explained that "[t]he bill ... provides that *if other laws provide for different methods of giving notice, such laws will control.*" Stand. Comm. Rep. No. 751–76 in 1976 Sen. Journal at 1211 (emphasis added). In this case, HRS § 281–57 controls the method for providing notice [33] of the public hearing to individuals most likely to be affected by the grant of a liquor license. Thus, by its own terms, HRS § 91–9.5 does not apply in situations, such as public hearings on liquor license applications like in the instant case, where other laws provide a different method of serving notice. Accordingly, the notice provisions contained in HRS § 281–57 govern the means by which notice of Commission hearings must be served.

### B.

■ Similarly, HRS § 91–9(a) instructs that "all *parties* shall be afforded an opportunity for hearing after reasonable notice" and sets forth the required content of such notice. (Emphasis added.) As noted above, HRS § 91–1(3) defines "party" in relevant part, as "each person ... properly seeking and entitled of right to be a party...." [34] Thus,

owners and lessees of record, registered voters, and small businesses that have not been admitted by the Commission would not be considered "parties" as defined in HRS § 91–1(3). *See* discussion *infra.* However, persons living near the subject premises have a right to participate in the public hearing pursuant to HRS § 281–58 (allowing "any registered voter for the area within five hundred feet" of the premises or "any owner or lessee of record ... within a distance of five hundred feet" of the premises to file "[p]rotests against the granting of a license"). In order to exercise their right to participate in the proceedings, they must be entitled to some form of notice. Thus, the content of the notice sent to these persons is governed by HRS § 281–57, which prescribes that the notice mailed by the applicant indicate "the time and place of the hearing...."

■ On the other hand, in this case, the content requirement of HRS § 91–9 would apply to notice served on Respondent and Intervenors if, pursuant to the court's instructions, the Commission decides to hold additional hearings because, under the circumstances of this case, they fall under the definition of "party" as set forth in HRS § 91–1(3) and HAR § 3–80–1.1. With regard to HRS § 91–1(3), Respondent, as the applicant, is named as a party, and the Intervenors have been admitted to the proceeding by the court, thus for purposes of further proceedings related to the subject applica-

---

**33.** In that connection, the Commission's Rules elaborate on to how notice is to be served. Hawai'i Administrative Rules (HAR) § 3–81–19.6 (2005) instructs that

(a) Unless otherwise provided by this chapter or by other applicable law, *whenever service is required to be made on any party to a proceeding before the Commission, service shall be made personally or by certified mail; the document to be served at the party's last known address or to the party's attorney of record or to any other individual duly authorized to represent the party in the proceeding.* (b) If personal service or service by certified mail is unsuccessful, the Commission may authorize service by publication if permitted by statute. The Commission may require that personal service be attempted prior to permitting service by publication. After service by publication has been authorized, whenever service is required to be made on that party thereafter, service by

first class mail to the party's last known address shall be sufficient.

(Emphasis added.) Relatedly, HAR § 3–81–19.7 (2005) states that

[u]nless otherwise provided by these rules, *a party filing a pleading, motion, memorandum, document, or other paper in connection with an adjudication hearing shall cause a copy of the pleading, motion, memorandum, document, or other paper to be served upon each of the other parties to the adjudication hearing, or upon any agent or attorney representing the other party.* The party shall attach to the pleading, motion, memorandum, document, or other paper a certificate of service indicating the date and manner of service.

(Emphasis added).

**34.** The Commission's Rules define parties as, *inter alia,* "a petitioner, claimant, respondent, intervenor, or ... [person] other than ... a witness." HAR § 3–80–1.1 (June 2005).

tion, they are also parties.[35] In HAR § 3–80–1.1, the definition of "party" explicitly in-

**35.** It should be noted that HRS § 91–14(a) provides that "[a]ny *person aggrieved* by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]" (Emphasis added) The statute does not define "person aggrieved." However, "person aggrieved" appears to be essentially synonymous with someone who has "suffered 'injury in fact.'" *Ariyoshi v. Haw. Pub. Employment Relations Bd.*, 5 Haw.App. 533, 540, 704 P.2d 917, 924 (1985).

In turn, whether one has suffered an "injury in fact" is determined under a three part test: (1) whether the person "has suffered an actual or threatened injury as a result of the defendant's wrongful conduct," (2) whether "the injury is fairly traceable to the defendant's actions," and (3) whether "a favorable decision would likely provide relief for [the person's] injury." *Keahole Def. Coal.*, 110 Hawai'i at 434, 134 P.3d at 600 (citations and internal quotation marks omitted). It seems that Intervenors would satisfy this test. First, Intervenors contend that they were deprived of the opportunity to effectively oppose Petitioner's application, *i.e.*, to trigger the automatic denial provision contained in HRS § 281–59(a), requiring the application to be "refused" if half the neighboring registered voters or owners/lessees opposed the application (the "actual injury") because Petitioner did not follow the statutory notice requirements (the "wrongful conduct"). Second, such injury would be "fairly traceable" to Petitioner's actions inasmuch as Intervenors argue that because the mailing lists were inaccurate, they were unable to easily and accurately ascertain whose signatures should be solicited in their opposition and therefore were unable to obtain the requisite signatures before the public hearing. And third, a favorable decision would remedy the injury inasmuch as the application process would have to begin anew, giving Intervenors another opportunity to persuade (or compel, if enough signatures were collected,) the Commission to reject Petitioner's application.

In addition to being "aggrieved," a person seeking judicial review of an agency decision "must have been involved in the contested case before the [agency]." *City & County of Honolulu v. Pub. Utils. Comm'n*, 53 Haw. 431, 433, 495 P.2d 1180, 1182 (1972); *see also Jordan v. Hamada*, 64 Haw. 451, 458, 643 P.2d 73, 75–76 (1982) (explaining that, in order to have standing to appeal an agency decision pursuant to HRS § 91–14, "the aggrieved person must have participated in the contested case from which the decision affecting him resulted" (citations omitted)). To meet this requirement, "the claimant must have followed the applicable agency rules and, therefore, have been involved 'in' the contested case[.]" *PASH*, 79 Hawai'i at 431, 903 P.2d at 1252 (citation omitted). *See also In re*

*Hawaiian Elec. Co.*, 56 Haw. at 261, 265, 535 P.2d at 1103–04, 1106 (allowing a non-profit corporation concerned with environmental preservation and a customer of the applicant utility to appeal the rate increase approved by the Public Utilities Commission where the appellants had followed the agency's procedures and been "involved as 'participants' during the agency hearings," insofar as "[e]xtensive testimony on environmental matters was given by representatives of [the non-profit corporation] at each of the hearings" and the customer "gave testimony at [one] hearing").

This court has also said that involvement in a contested case hearing does not require that the person seeking judicial review formally intervene in the matter, but rather, that the person participated in an adversarial-type hearing. *See PASH*, 79 Hawai'i at 433, 903 P.2d at 1254 (appellant had followed the Rules of the Hawai'i Planning Commission in seeking a contested case hearing and judicial review, such that its right to appeal was perfected notwithstanding that fact that the agency had not granted it formal leave to intervene); *Mahuiki*, 65 Haw. at 515, 654 P.2d at 880 (explaining that "[p]articipation in a hearing as an adversary ... has been held sufficient to give rise to appeal rights" (citation and internal quotation marks omitted) (ellipsis in original)); *In re App. of Hawaiian Elec. Co.*, 56 Haw. at 264, 535 P.2d at 1105 (explaining that "adversary participation need not be confined to formal proceedings before the agency"); *E. Diamond Head Ass'n*, 52 Haw. at 524, 479 P.2d at 799 (holding that because rules of the Zoning Board of Appeals did not provide for formal intervention but merely contained "a requirement for the presentation of grievances," which mandated that the agency provide all parties an opportunity "to present evidence and argument on all issues involved," the appellants perfected their right to appeal by testifying at the public hearing and they were not required to "formally intervene" (citations and internal quotation marks omitted)).

The Intervenors also participated in the public hearings. At the commencement of testimony, the Chairman of the Commission instructed the members of the public that the Commission's counsel informed him that "if [they wanted to] be counted as a[n] official protestor," they should "state [their] name and address ... for that count," the total count. Four of the five Intervenors complied with the Commission's instructions. The final Intervenor, H. James Stahl, testified before the Commission, and indicated that he was "president of the AOAO Board," but did not give his full address.

Related to the second standing requirement, it should be noted that the Commission has not promulgated procedures for admitting persons seeking admission to contested case hearings. *See* HAR § 3–81–19 (June 2005) ("Hearings, Attendance, Examinations"), and HAR § 3–83–52 (June 2005) ("Public Hearing (Reserved)"). In this case, the Commission was not treating the hearing on Petitioner's application as a contested

cludes the entities named in the proceeding, *e.g.*, the applicant and intervenors. Thus Respondent and Intervenors are parties for purposes of the contested case hearing statute. *Cf. Int'l Bhd. of Painters & Allied Trades, Drywall Tapers, Finishers & Allied Workers*, 104 Hawai'i at 281, 88 P.3d at 653 (explaining that, under HRS 91–14, "[t]o be entitled to judicial review of the [agency] decision, *appellees 'must have participated in a "contested case" hearing'"* (quoting *Alejado v. City & County of Honolulu*, 89 Hawai'i 221, 226, 971 P.2d 310, 315 (1998))) (emphasis added); *Sierra Club v. Haw. Tourism Auth. ex rel. Bd. of Dirs.*, 100 Hawai'i 242, 277, 59 P.3d 877, 912 (2002) (concluding that "[t]he original legislative history of [the Hawai'i Environmental Procedures Act] ... contemplated that a *plaintiff would be considered an 'aggrieved party'* with standing [to appeal] only if the party had exhausted available administrative review processes by *participating in a contested case hearing*, as specified in [HRS chapter 91]" (citing Stand. Comm. Rep. No. 956–74, in 1974 Senate Journal, at 1126–27)) (emphases added); *Alejado*, 89 Hawai'i at 226, 971 P.2d at 315 (holding that "[w]ithout participation* in a 'contested case' hearing, *a party cannot be 'aggrieved'* and therefore has no right to appeal" (quoting *Pele Defense Fund*, 77 Hawai'i at 70, 881 P.2d at 1217)) (emphases added); *In re Application of Hawaiian Elec. Co. Inc.*, 81 Hawai'i 459, 473, 918 P.2d 561, 575 (1996) (noting that "the [Public Utilities Commission's] rules provide a *mechanism for parties to participate in contested case proceedings*" and the Public Utilities Commission "did not preclude anyone from becoming a party to the contested case proceeding" (citation omitted)) (emphasis added).

Similarly, HRS § 91–11 applies only to "part[ies] to the proceeding other than the

agency itself" and therefore would only apply to those persons properly admitted by the agency as parties to the contested case hearing. *Cf. Bush*, 76 Hawai'i at 134, 870 P.2d at 1278 (explaining that "it is not enough that a person has been aggrieved by agency action. He or she must have participated in a contested case before an administrative agency to acquire standing to challenge the decision in court" (internal quotation marks and brackets omitted)); *Life of the Land. Inc. v. Land Use Comm'n*, 61 Haw. 3, 9, 594 P.2d 1079, 1083 (1979) (relying on the holding in *City & County of Honolulu v. Pub. Utils. Comm'n*, 53 Haw. at 433, 495 P.2d at 1182, that because the "appellant failed to intervene as a party, failed to receive permission to participate and failed to participate in the agency hearing[,]" the appellant lacked standing to appeal).

## XIII.

Relatedly it may be noted that without taking direct issue with the scope of the court's remand instructions, the ICA alluded to two issues not raised by the parties or the court regarding the Commission's receipt of protests against Petitioner's application. First, the ICA said that the Commission's rule requiring protests to an application for a liquor license be submitted to the Commission three business days before the public hearing, but that gave the Commission discretion to "allow additional protests to be filed at the public hearing or any adjournment thereof[,]" Rules § 3–83–58.1, "appear[ed] to be inconsistent with HRS 281–57(b)," which requires that such protests can be filed "*at or before* the time of hearing." *E & J Lounge*, 116 Hawai'i at 541 n. 26, 174 P.3d at 380 n. 26 (quoting HRS § 281–57(b) (emphasis added)) (internal quotation marks omitted).[36] Second, the ICA expressed

case hearing and thus, any such procedure would not have been invoked. However, the existence of such procedures would facilitate ascertaining which statutes and rules pertain to whom.

36. This issue was not raised to the court or the ICA at any stage of the appeal. Nor was it presented to this court in the Application. Moreover, it is inapposite to the disposition herein inasmuch as it is undisputed that the Commis-

sion took protests and objections, including testimony from each of the Intervenors, at both the April 21, 2005 and the April 28, 2005 public hearings. Furthermore, while Petitioner opposed Intervenors' Motion to Intervene in the court, its opposition was not based on any argument that the Intervenors had not participated in the agency proceeding, but rather, on the ground that the Intervenors' "positions [were] not supported by law[,]" insofar as the Intervenors ar-

doubt that the Commission was authorized to continue receiving protests after the first date of the public hearing. The ICA explained:

> Pursuant to HRS § 281–57(b), the cut-off time for receipt of protests or objections against the issuance of a liquor license is the date of the hearing stated in the hearing notice that is published in the newspaper. *If the Commission continues the hearing because it is unable to complete its decision-making on the published hearing date, there appears to be no statutory authority that allows the Commission to accept additional protests.* If the date for receipt of protests is a moving target, it would be difficult for the Commission or its staff to determine whether the requisite number of protests has been received for automatic refusal of the application pursuant to HRS § 281–59(a)(2) (Supp.2006).

*Id.* at 542 n. 29, 174 P.3d at 381 n. 29 (emphasis added).[37] However, inasmuch as the parties did not raise these issues in their appeal to the ICA and Petitioner did not raise these issues in its Application, the issues are deemed waived and need not be considered. *See* HRAP Rule 8(b) ("Points not presented in accordance with [HRAP Rule 28] will be disregarded, except that the appellate court, at its option, may notice a plain error not presented"); *Sprague v. Cal. Pac. Bankers & Ins. Ltd.*, 102 Hawai'i 189, 195, 74 P.3d 12, 18 (2003) ("It is within the appellate court's discretion whether to recognize points not presented in accordance with HRAP Rule 28(b)(4).").

## XIV.

### A.

Because the case must be remanded to the Commission in light of the court's instructions concerning notices, the question of whether Petitioner's application must be deemed automatically granted for the alleged failure of the Commission to comply with HRS § 91–13.5(c) must be decided although it was not raised in Petitioner's questions to this court. To repeat, COLs 9 and 10 stated:

> 9. *HRS § 91–13.5(c) requires the Commission to take action on the application within the time prescribed by HRS § 281–59(a) or the license is deemed granted.*

> 10. At this time the [c]ourt does not rule on whether the Commission's denial of the Application in light of its failure to comply with HRS § 91–11, would be deemed a failure to act under HRS § 19–13.5[91–13.5](c).

(Emphasis added.) The resolution of this issue is pertinent to the disposition of this case. If Petitioner's arguments are well-taken, an appellate court would be constrained to order the Commission to grant Petitioner's liquor license rather than confirm the court's decision to remand the case.

---

gued that (1) "[i]f [Kim] had been in attendance on May 12, 2005, he would have voted against [Petitioner's] application," which Petitioner dismissed as "not relevant" and "simply conjecture[,]" and (2) "[a]lthough he was not present at the April 21, 2005[ ] hearing, [Auyoung] had enough information on which to base his decision to deny [Petitioner's] application[,]" which is fundamentally contrary to the requirements of HRS § 91–11. In its Order granting the Motion to Intervene, the court did not explain why it was granting the motion. Also, a transcript of the October 26, 2005 hearing on the Motion to Intervene was not made part of the record on appeal. However, neither Petitioner nor the Commission appealed the court's order granting the Motion to Intervene to the ICA or to this court.

**37.** Relatedly, HRS 281–59(c)(2) provides that, in certain instances, the Commission may continue a hearing and allow the Petitioner to respond to objections. Specifically, the Commission may continue the hearing to investigate or consider further "any matter or thing which in the opinion of the majority of its members would be a sufficient objection to the granting of a license[,]" but if "the objection is one to which the application should be given a reasonable time to answer," the Commission may grant a continuance in its discretion. HRS § 281–59(c)(2). If, on the other hand, a party affected by the application desires the Commission to consider new evidence, that party must petition for a rehearing, and the Commission must conduct a rehearing if it deems it appropriate to consider that evidence. *Id.* (providing that "in any case where any person affected .... petitions the [C]ommission for a rehearing of the application and ... alleges facts and grounds for consideration which were not formerly presented or considered ... such rehearing may be granted by the [C]ommission in its discretion upon the publication of notice of rehearing").

### B.

In Petitioner's Notice of Appeal filed in the court, Petitioner contended that because the Commission did not comply with HRS § 91–11, it "failed to follow the well-established law to issue a decision within the time period required by HRS § 281–59, by operation of HRS § 91–13.5, [and Petitioner] is entitled to the issuance of the [l]icense forthwith."

Petitioner stated in its Opening Brief to the court that at the May 12, 2005 meeting, the Commission's counsel advised that "a decision needed to be made on the liquor license application or else, by operation of law, the license would soon be approved since the [fifteen] days after the close of the public hearing had nearly expired." Without addressing the limitations contained in HRS § 91–13.5(e), Petitioner further argued to the court that

> [t]he maximum time allowed for liquor license applications is provided by HRS [§ ]281–59. [The Commission] was required by HRS [§ ]281–59 to either approve or deny [Petitioner's] liquor license application within [fifteen] days of the close of the public hearing on the application. This meant that *if the [Commission] did not follow all of the steps necessary to deny [Petitioner's] application by May 14, 2005, [Petitioner's] license would be granted.*
>
> HRS [§ ]91–11 prohibits an adverse decision on [Petitioner's] liquor license application by the [Commission] until its statutory requirements are fulfilled. *Since the [Commission] has not fulfilled those statutory requirements, the [Commission] was, and continues to be, legally prohibited from deciding against [Petitioner's] license application. Because the deadline mandated by HRS [§ ]91–13.5 [in conjunction with HRS § 281–59] has passed, [the court] should order the [Commission] to issue [Petitioner's] license.*
>
> . . . .
>
> The [c]ourt should not order an extension of the time for the [Commission] to rule on [Petitioner's] application since such extension of time would clearly violate HRS [§ ]91–13.5. *Any extension of time would violate the letter of the law* and

frustrate the legislature's intent to fix a maximum time for administrative action on business-related permits.

(Emphases added.)

The Commission did not dispute that HRS § 91–13.5 applied to its decisions regarding applications for liquor licenses. However, it contended that it acted within the statutorily prescribed fifteen day time limit inasmuch as the public hearing was closed on April 28, 2005 and the Commission "made its decision to deny [Petitioner's] liquor license application . . . fourteen days after the close of the public hearing."

It does not appear in the record that this issue was argued further before the court. As noted previously, the court declined to rule on whether the Commission had failed to act on Petitioner's liquor license application such that the automatic approval provision of HRS § 91–13.5(c) applied. *See* COL No. 10. Although COL no. 9 was not challenged on appeal to the ICA, that court noted that it appeared incorrect and questioned whether HRS § 91–13.5(c) would apply. The ICA noted, without deciding, that HRS § 91–13.5(e) limits its application to

> any state or *county application,* petition, permit, license, certificate, or any other form of a request for approval *required by law to be obtained prior to the formation, operation* or expansion *of a commercial* or industrial *enterprise, or for any* permit, *license,* certificate or any form of approval *required under sections* 46–4, 46–4.2, 46–4.5, 46–5, and chapter 183C, 205, 205A, 340A, 340B, 340E, 340F, 342B, 342C, 342D, 342E, 342F, 342G, 342H, 342I, 342J, 342L, and 342P.

*E & J Lounge,* 116 Hawai'i at 543 n. 29, 174 P.3d at 382 n. 29 (quoting HRS § 91–13.5(e)) (emphases omitted and emphases added). Looking to the plain language of the statute, the ICA explained that "a liquor license is issued pursuant to HRS chapter 281," which is not one of the sections listed in HRS § 91–13.5(e). *Id.* However, the ICA further posited that because "many restaurants and commercial or industrial enterprises operate without a liquor license," *id.,* it could not conclude whether such a license was of the

type " 'required by law to be obtained prior to the formation, operation, or expansion of a commercial or industrial enterprise' that the legislature intended to be subject to the automatic approval requirements of HRS § 91–13.5[,]" *id.* (quoting HRS § 91–13.5(e)).

## C.

 In that regard, and as a threshold matter, it must be determined whether the Commission's failure to comply with HRS § 91–11 constituted a "failure to act" for purposes of HRS §§ 281–59 and 91–13.5. There is no case law defining what constitutes a "failure to act" under HRS § 281–59. However, this court has previously stated that an action can be defined as a "deliberative or authorized proceeding: ... an act or decision by an executive or legislative body...." *Hawaii Elec. Light Co.*,[38] 102 Hawai'i at 270, 75 P.3d at 173 (quoting *Webster's Third New Int'l Dictionary* 21 (1986)) (internal quotation marks omitted) (first ellipses in original).[39] Correlatively, a "decision" is defined as "the act of deciding; [specifically,] the act of settling or determinating (as a contest or controversy) by giving judgment." *Id.* (quoting *Webster's Third New Int'l Dictionary* at 585) (internal quotation marks, emphasis, and brackets omitted). Synthesizing these definitions, this court announced that "[a] decision ... connotes the act of deciding or settling a controversy or question." *Id.*

It may be concluded that the Commission's vote to deny Petitioner's application "decid[ed] or settl[ed] a controversy or question." No party argues that, but for the fact that Commissioner Au Young was not pres-

ent at the first meeting and was not made familiar with the course of that meeting pursuant to HRS § 91–11, the Commission was incapable of rendering a decision on Petitioner's application on May 12, 2005. The fact that the decision was legally ineffective does not mean that the Commission failed to act for purposes of the relevant statutes.

 Such an interpretation would violate the well-established tenet of statutory construction that "an interpreting court should not fashion a construction of statutory text that effectively renders the statute a nullity or creates an *absurd or unjust result.*" *Konno v. County of Hawai'i*, 85 Hawai'i 61, 71, 937 P.2d 397, 407 (1997) (internal quotation marks and citation omitted) (emphasis added). Under such a rule, any procedural error committed in the course of denying a license or permit would trigger the automatic approval provision, requiring the reviewing court to order the pertinent agency to grant said license or permit. Given that the legislature provided an avenue for judicial review pursuant to HRS § 91–14, it would be legally absurd to conclude that the legislature simultaneously intended to deprive the courts of discretion to fashion appropriate remedies where the agency acted, but that action was deemed to be flawed.

## XV.

Accordingly, we hold that the ICA erred in determining that the Commission was not obligated to comply with HRS chapter 91 in considering Petitioner's application for a liquor license. The public hearing on Petitioner's application constituted a contested case

---

**38.** In *Hawaii Electric Light Co.*, this court held that "any action by the Board of Land and Natural Resources [ (the Board) ]" required a vote by the majority "of all the members to which the Board is statutorily entitled[,]" *i.e.*, four members. 102 Hawai'i at 261, 75 P.3d at 164. Thus, "because the Board failed to render four votes either approving or rejecting" the subject application, it was deemed granted by operation of the default provision contained in HRS § 183–41 (1993). *Id.* In contrast, in the instant case, three members of the Commission, which is comprised of five commissioners, voted to deny Petitioner's application. Thus, a majority of the Commission voted, such that the denial would not be invalid under *Hawaii Electric Light Co.*

**39.** Subsequent to this decision, HRS § 91–13.5 was amended to provide that a lack of quorum did not constitute a failure to act. *See* 2005 Haw. Sess. L. Act 68 § 1, at 150 (adding language to provide that delay in action by the agency due to lack of quorum at a regular meeting or any subsequent meeting would not result in automatic approval). The amendment became effective on May 23, 2005. *See* 2005 Sess. L. Haw. Act 68 § 3, at 151. Thus, it was not in effect when the Commission voted to deny Petitioner's application and, in any event, appears inapplicable to the instant case.

hearing because it was required by law pursuant to HRS §§ 281–52 and –57 and it determined the rights, duties, and privileges of the Petitioner under HRS § 91–1 with regard to its application to offer alcohol for sale on its premises. The Commission's decision thus was subject to the requirements of HRS chapter 91, including judicial review pursuant to HRS § 91–14. The Commission did not comply with these provisions, specifically HRS § 91–11.

For purposes of guiding the Commission on remand, it is noted that there is no conflict between HRS § 91–11, requiring that the Commissioners personally consider the entire record, and HRS § 281–59(a), which mandates automatic denial of a permit when a sufficient percentage of neighbors oppose an application. Additionally, it is concluded that HRS § 91–13.5 does not compel the automatic approval of Petitioner's application in this case. The Commission's failure to comply with HRS § 91–11 is not a "failure to act" such as would trigger the automatic approval provision of HRS § 91–13.5. The Commission voted, albeit ineffectively, within the fifteen-day period prescribed by HRS § 281–59, thus avoiding the consequences of HRS § 91–13.5. Accordingly, the Commission retains the discretion to grant or deny the application pursuant to the provisions of HRS chapter 281.

Petitioner's application is remanded to the Commission with respect to the notices sent by Petitioner pursuant to HRS § 281–57 as the court instructed, inasmuch as this part of the court's decision and order was not challenged on appeal to the ICA or in the application to this court. Accordingly, the Commission must determine if Petitioner mailed notices to the requisite number of owners, lessees, and registered voters living in the vicinity of the premises as required by HRS § 281–57. If the notice requirements were satisfied, the Commission may grant or deny Petitioner's application in compliance with this opinion. If the Commission determines that Petitioner did not comply with the notice requirements contained in HRS § 281–57, the application may not be considered.

## XVI.

Hence, the ICA's December 24, 2007 decision and January 8, 2008 judgment are vacated. The case is remanded to the court for disposition by it as follows: (1) the Commission's June 16, 2005 order denying the application shall be vacated and the case remanded to the Commission for further proceedings, (2) that portion of the court's decision and order instructing that on remand to the Commission, "[t]he Commission shall determine whether the proper notice as required under HRS § 281–57 was made by [Petitioner,]" i.e., whether Petitioner sent notices to the requisite number of neighboring owners and lessees, is affirmed, see supra at 342–43, 189 P.3d at 454–55; however, if it is determined that Petitioner did not serve notice on the number of people mandated by HRS § 281–57, the application may not be considered, see supra at 346, 189 P.3d at 458; (3) that portion of the court's decision and order instructing that, "[u]pon determining the proper number of persons required to be served under HRS § 291–57[sic], the Commission may grant or deny the Application based on its ruling, may require the Appellant to serve all persons required to be served under HRS § 281–59[sic], and or hold additional public hearings" is affirmed except that (a) in making its ruling, the Commission must comport with HRS § 91–11, and (b) notices and the service thereof regarding any additional hearings must comply with (i) HRS § 91–9(b) (delineating the required content of notice of a contested case hearing) with respect to parties as defined under HRS § 91–1, and (ii) HRS § 281–57 (setting forth notice requirements for hearings on a liquor license application) as set forth herein.